In re EDDLEMAN.

(District Court, W. D. Kentucky. June 6, 1907.)

BANKRUPTCY—ORDER TO PAY OVER MONEY—FUNDS IN HANDS OF WIFE.

> Where a bankrupt, within a few days prior to the filing of the petition in bankruptcy against him, sold property, and paid the proceeds to his wife, she will be regarded as holding the same as his agent, and such facts justify an order requiring him to pay the money over to his trustee; but he cannot be adjudged in contempt for a failure to obey such order with respect to certain of the money which his wife is affirmatively shown to have paid out to a third person prior to the bankruptcy.

In Bankruptcy. On certificate from referee.

J. R. Duffin and Thatcher, Gifford & Steinfeld, for trustee.
W. M. Smith, for bankrupt.

EVANS, District Judge. It appears from the testimony that many years ago the bankrupt's wife gave him the money to pay the purchase price of two houses and lots in Louisville, Ky. With her consent the deeds thereto were taken in his name in order to give him greater credit in his business as a hat merchant; but, whatever the motive, she gave him the money, and the titles were taken in his name. Doubtless, he thereby had the greater basis of credit. Being at last in financial straits, on January 25 and 29, respectively, 1907, the bankrupt sold the property for cash, and, after paying certain charges and taxes, received on February 1, 1907, the net sum from the purchasers of $2,057.29. He now claims to have made these sales to enable him to settle with his creditors; but, finding it could not be done, he, on the last-named date, turned the whole amount over to his wife. While another transaction occurring a very short time before is not directly involved in the matters now before us, it may throw light on the latter to say that the bankrupt had very recently sold to his half-brother another house and lot in the same city, and no trace of the proceeds appears outside the family circle. On February 7, 1907, he made a deed of general assignment, and on the 12th of the same month these proceedings in bankruptcy were instituted by his creditors. Subsequently, on May 2d, the referee ordered the bankrupt to pay to O. G. Holt, the trustee, all of said $2,057.29 on or before 9:30 a. m. of May 8th. Instead of making the payments on May 8th, the bankrupt filed a response to the rule in these words:

> "Comes respondent Henry W. Eddleman, and says to the court that he is entirely unable to comply with the rule herein issued against him on May 2, 1907, requiring him to pay to the trustee O. G. Holt the sum of $2,057.29 because he says he has neither money, means, nor property with which to pay, or from which to realize, said sum or any part thereof, and that he has no means of obtaining same or any part thereof; that as shown by the record in this case, which is a fact, he had disposed of all of said money prior to the filing of the petition in bankruptcy against him; and that said money and all of same has passed out of his custody and control at the time stated. He says that as shown by the records and his testimony herein, he made an honest disposition of said money as he then understood his legal obligations in the matter, and now it is beyond his power to restore same to this trustee or to comply to any extent with the rule herein, except to respectfully submit this response.
>
> 　　　　　　　　　　　　　　　　　　　　　"Henry W. Eddleman."

After argument the referee held this response to be wholly insufficient, and the bankrupt has filed a petition for a review of that ruling. The referee certified the matter up, with the recommendation that the bankrupt be punished for contempt in disobeying the rule to pay the money. We will consider first the petition for a review of the order requiring payment. The evidence shows that when the bankrupt got the money, instead of settling with his creditors, he at once delivered all of it to his wife, and this is what he calls in his response an honest disposition of it, as he then understood his legal obligations.

We need spend no more time upon the petition for a review. The referee was plainly right, and that petition will be dismissed, though the order will be modified upon considerations entirely apart from the response.

As to the recommendation made by the referee that the bankrupt be punished for contempt, section 41 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 556 [U. S. Comp. St. 1901, p. 3437]) prescribes the course of procedure, and accordingly we have considered the testimony offered, which is the same as that before the referee. Upon it we remark that the idea of legal obligation which the bankrupt seems to have entertained was that he was under no duty to pay out the proceeds of his property to his creditors, but was bound to hurry every dollar of it into the hands of his wife. This left the money very close at home, although thought to be out of the reach of the bankrupt's creditors. It has an ugly look, and one which by no means commends the transaction to the favor of the court. The evidence, however, further shows that $1,605 of the money was paid out by the wife to Mrs. Fredricka Nickel, to whom she owed a note for borrowed money. This payment seems to have been made before the petition in bankruptcy was filed. There may not be any presumption that it was so, yet it is possible that this transaction may have been a fraudulent one—a mere friendly contrivance. Nevertheless, it is fair to assume that Mrs. Nickel thereby acquired what is called by the Supreme Court, in Mueller v. Nugent, 184 U. S. at page 15, 22 Sup. Ct. 269, 46 L. Ed. 405, a basis for an adverse claim to that much of the $2,057.29, and, if so, we can hardly see how we can punish the bankrupt for contempt for not paying over the money which the testimony shows was, presumably at least, adversely claimed by another person. The bankrupt, however, rushed all the $2,057.29 over to his wife, and we see no reason why she might not be regarded as his agent and stakeholder in respect to it, and it is clear that when the petition in bankruptcy was filed, and when the adjudication was made, she had in her hands of money belonging to the bankrupt the difference between $2,057.29 and $1,605, viz., $452.29. It is not too much to assume that this sum was in easy reach of the husband. Certainly it was his property, and belonged to the bankrupt's estate eo instanti the adjudication. Under section 29 of the act, it might have been a somewhat serious matter to interfere with it. We shall not assume that any criminal act was committed with respect to it, but shall assume that it remains intact. Courts could not tolerate, and this court would be far from encouraging, any practices by which bankrupt debtors could convert

their property into money on the-eve of failure and deliver it over to wives, and then insist that the latter are adverse claimants, hoping thus to evade the powers of the bankruptcy tribunals. Under such circumstances, the wife should be regarded as agent of the husband, and treated accordingly.

Upon considering all the testimony, we have concluded that the bankrupt was guilty of contempt in not paying to the trustee the sum of $452.29 only. His response made no showing of the facts as to the $1,605, but the evidence heard does.

The judgment of the court will therefore be that he pay the sum of $452.29 to O. G. Holt, the trustee herein, on or by 10 a. m. of Thursday, June 13, 1907. If that is not done, he may certainly expect an enforcement of the rule by the process usual and appropriate upon such occasions. The order sought to be reviewed will thus stand modified to the extent indicated.