---

## In re SHEA.

### (District Court, W. D. Kentucky. February 19, 1914.)

1. **BANKRUPTCY (§ 288\*)—RECOVERY OF PROPERTY—ADVERSE CLAIMS—SUMMARY PROCEEDINGS.**

   Whether a bankrupt's trustee may maintain summary proceedings. against the bankrupt and his wife to recover money and property, claimed by her, as a part of the bankrupt's estate, over her protest that she is entitled to be proceeded against in a plenary action, depends on whether she has a bona fide claim of ownership or whether it clearly appears that she is holding the money as a mere agent of the bankrupt.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.\*]

2. **BANKRUPTCY (§ 288\*)—PROPERTY OF BANKRUPT—RECOVERY—ADVERSE CLAIM.**

   Between April 21, 1913, and the following November the bankrupt gave to his wife $3,970.38, which she deposited to her own credit. By November 10th she had checked against the account so that only $684.47 remained. A bankruptcy adjudication was passed on November 11th, after which the wife further withdrew $449.93, but on December 2d added to her credit $284.64. It also appeared that, shortly after the marriage of the parties in 1906, the bankrupt delivered most of his earnings to his wife with the understanding that she should pay the family expenses, and that any money she saved out of it should be her own property, and that from such savings she bought certain building association stock, which had always been in her name. *Held*, that the wife, as to the stock and the money deposited in the bank, except the balance of $284.64 remaining, had a bona fide adverse claim which she was entitled to have tried in a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907, to date, & Rep'r Indexes

plenary suit as against the husband's trustee in bankruptcy, notwithstanding Ky. St. § 1907, providing that every gift made by a debtor without a valuable consideration shall be void as to all his then existing creditors, etc.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*]

In Bankruptcy. In the matter of bankruptcy proceedings of John H. Shea. An order having been entered by the referee requiring the bankrupt and his wife to deliver certain moneys and securities to the trustee as belonging to the bankrupt's estate, the wife filed a petition for review. Reversed in part, and affirmed in part.

Burwell K. Marshall, of Louisville, Ky., for trustee.
John B. Baskin, of Louisville, Ky., for respondents.

EVANS, District Judge. On his own petition John H. Shea was on November 11, 1913, adjudicated a bankrupt. R. H. Courtney was qualified as trustee, and on January 2, 1914, filed a petition before the referee which contained the following averments, to wit:

"Your petitioner, R. H. Courtney, respectfully shows: That he is trustee in bankruptcy herein, duly qualified and acting. That·the said John H. Shea, bankrupt, has been examined in this proceeding and denied that there was any sum of money belonging to the said bankrupt or any property due him, but your petitioner states that said bankrupt has in the possession of his wife, Irene Shea, $684.47 on deposit in the First National Bank, which belonged to the estate of the said John H. Shea, bankrupt, at the time of the adjudication of bankruptcy herein, and has $837 in shares of stock in the Avery Building Association standing in the name of Irene Shea or Mrs. J. H. Shea which belonged to the said John H. Shea, bankrupt, at the time of the adjudication of bankruptcy herein, and has $1,958 in shares of stock in the Portland Building & Loan Association standing in the name of said Irene Shea or Mrs. J. H. Shea which belonged to·said John H. Shea, bankrupt, at the time of the adjudication of bankruptcy herein, but that said Irene Shea claims tó be the owner of said money and said certificates of stock, and that same do not belong to the estate of said John H. Shea, bankrupt. That W. F. Woodruff, for the use and benefit of Jefferson county, the only creditor herein, has requested that your petitioner, as trustee, bring an action against Irene Shea for the recovery of the said money and stock claimed to be due the estate of John H. Shea, bankrupt, and your petitioner has been advised by his counsel, Burwell K. Marshall, that he has a good and valid cause of action against Irene Shea and John H. Shea for the said stock·and money. Wherefore your petitioner, R. H. Courtney, trustee in bankruptcy of John H. Shea, prays for a rule against Irene Shea and John·H. Shea, bankrupt, requiring them to pay to your petitioner the said money and turn over to him the said shares of stock·in said building and loan associations."

Upon reading this petition the referee, on the day last named,˙instead of directing a suit to be brought on the cause of action the trustee was advised he had, ruled the bankrupt and his wife, Irene Shea, the latter not otherwise a party to the proceeding, to show cause on January 16th why they should not. be required to turn óver to the trustee the money and stock described in the petition we have copied. To this rule a written response was made, and the referee having, on January 30th, upon grounds stated in writing, held it to be insufficient, made the rule absolute, and the bankrupt and Mrs. Shea have filed a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

petition for a review by the court of the referee's order. Treating the response of the bankrupt and his wife as that of the latter alone (the bankrupt having little or no legal interest in the question between his wife and his trustee), we must determine whether Mrs. Shea has shown a claim adverse to that of the trustee, either to the stock described in the petition or to the money in bank, or both, such as would entitle her to have the questions between her and the trustee determined in a plenary action where the claims of both could be adequately investigated and determined, or whether their respective claims should be adjudicated in a summary proceeding like this.

[1] We shall assume, if the property be that of the bankrupt, that so far as he is concerned he might, if the property is in his possession, be subjected to a rule to show cause. In reaching a conclusion, however, between the trustee and the outside adverse claimant, we must find an answer, not to the question of what may ultimately be held to be the exact rights of the parties, but whether Mrs. Shea in fact has an adverse claim which is not merely colorable but which might, in whole or in part, be sustained in a plenary action. The court has the right (Louisville Trust Co. v. Comingor, 184 U. S. 25, 22 Sup. Ct. 293, 46 L. Ed. 413) to pass upon the case to that extent when a summary proceeding is resorted to. Where, as in Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405, the person ruled showed that he held money as a mere agent of the bankrupt and not as an adverse claimant of title thereto, there was no reason why he should not be required to deliver to the trustee what he held as agent for the bankrupt; that is to say, if he had in his possession property belonging to the bankrupt and which he held as the bankrupt's agent, manifestly he had no adverse claim to it and could be compelled to turn it over to the trustee. Following that case is that of In re Eddleman (D. C.) 154 Fed. 160, which, in one of its aspects, was like the Nugent Case. The rulings in those cases apply to this one to the extent that if Mrs. Shea holds the money or the stock or any part of it as the mere agent of the bankrupt, and not under a bona fide claim of ownership, she may be coerced by rule to turn it over to the trustee, but, if she has possession and is a bona fide claimant of ownership, she cannot be dispossessed nor her claim of title adjudicated except in a plenary action. First National Bank v. Chicago, etc., Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051.

Remembering, first, that we are not to determine, in this proceeding, the merits of her claim to ownership, except to the extent that on her own showing it is not maintainable, and, second, that otherwise we are only to decide as to the good faith of her adverse claim and not upon the merits of a controversy in respect thereto to be determined in a plenary suit, we come to the consideration of the response and the testimony thereon, testimony which seems to have been considered by the referee as bearing on the merits of the controversy rather than on the question of the adverse character of the claim of Mrs. Shea. The latter, however, is the dominant consideration applicable to the very narrow question now involved, but to which we find it somewhat difficult to get the referees to limit themselves. The inquiry now is not

whether the trustee should or should not succeed in a plenary suit but whether that is the only proper way to litigate a controversy fairly entitled to be regarded as one involving adverse claims to certain property. A plenary suit, speaking generally, presents no obstacle to a trustee in the assertion of his rights to property claimed to be that of the bankrupt but in fact held by another, and such a suit is the only way by which an adverse claimant who is in possession can be reached. In re Mimms & Parham (D. C.) 193 Fed. 276–278.

[2] 1. As to the $684.47, the response shows that the bankrupt gave to his wife, Irene Shea, between April 21, 1913, and November 3, 1913, both dates inclusive, the sum of $3,970.38, which she deposited in the First National Bank to her credit, and that between April 28, 1913, and November 10, 1913, both dates inclusive, she checked thereon to the extent of $3,285.91, leaving at the last-named date the balance of $684.47, and that after November 10, 1913, and before respondents knew that any part of said balance would be claimed by the bankrupt's trustee, Mrs. Shea, on her own checks, withdrew $449.93 of the $684.-47 and left thereof only a balance of $234.54. On December 2, 1913, she added to her credit in the bank $284.64. When she got the latter sum is not anywhere disclosed by the record, but, before the trustee can be entitled to it at all, he must show that it was earned or acquired by the bankrupt before his adjudication as such on November 11, 1913, after which event what he might earn would be his own and not his trustee's; the rights of the latter not extending to anything earned or acquired by the bankrupt after the adjudication. As to questions respecting the $449.93, withdrawn after the adjudication and not now in the possession of respondents, and those respecting the $284.64 deposited on December 2, 1913, it seems to be clear that there exists such a situation as demands a plenary action for the settlement of such questions as may arise. But as to the $234.93 it seems to be manifest that it belonged to the bankrupt at the time of his adjudication, and was held by his wife as his agent to be paid out by her for certain purposes, such as family expenses, etc. No part of this balance appears to be the wife's property or to be claimed by her under the hereinafter stated agreement between her and the bankrupt. As to this last-named sum we think the referee was right in making the rule absolute and requiring its payment to the trustee.

2. As to the various interests in the stocks of the two building and loan associations, it may suffice to say that the response shows that the stock was all purchased by Mrs. Shea at various times more or less distant from the adjudication, but all previous to that event; that the books representing the stock in the manner peculiar to such associations were issued in her name, were all delivered to her, and were in her possession exclusively, both before and at the time of the adjudication, and have been so ever since. In whatever way Mrs. Shea may have obtained the money to pay for it, in fact none of the stock mentioned in the trustee's petition was ever bought or owned by the bankrupt. It was never put in his name, and was never in his possession.

It seems not to be disputed, and we therefore find it to be true, that, shortly after the marriage of the respondents early in 1906, the bank-

rupt arranged with his wife to put most of his earnings in her hands, she to pay all bills, expenses, etc., of the family, and if she, by judicious and economical management, saved anything out of the money, the amount thus saved was to become her property. In this way, out of the bankrupt's earnings she saved the money which, regarding it as her own, she invested in the stock of the associations referred to, such investments being made in her name, and which stocks she claims in the response are her own property and in her own possession. This was all done, as we have said, before the adjudication; most of the stock having been obtained by Mrs. Shea more than a year before that event. Having long had possession of the stock, and having purchased and held it in her own name and with money which she regarded as her own, can she fairly be said to be a bona fide claimant thereof adversely to the trustee? Upon the authority of the decision of the Supreme Court in Louisville Trust Co. v. Comingor, 184 U. S. 18, 25, 22 Sup. Ct. 293, 46 L. Ed. 413, and upon that of the Circuit Court of Appeals of the Eighth Circuit in Re Rathman, 183 Fed. 913, 106 C. C. A. 253, we think the question must be answered in the affirmative. See, also, 2 Loveland on Bankruptcy (4th Ed.) § 540, and Collier on Bankruptcy (9th Ed.) pp. 476, 477, 478, and 479.

True, section 1907 of the Kentucky Statutes provides as follows:

"Every gift, conveyance, assignment, transfer or charge made by a debtor, of or upon any of his estate, without valuable consideration therefor, shall be void as to all his then existing liabilities, but shall not, on that account alone, be void as to creditors whose debts or demands are thereafter contracted; nor as to purchasers with notice of the voluntary alienation or charge; and though it be adjudged to be void as to a prior creditor, it shall not therefore be deemed to be void as to such subsequent creditors or purchasers."

But while those provisions may or may not make the title of Mrs. Shea to the stock more difficult to maintain, even in a plenary action, nevertheless it is possible for her to show that she paid a valuable consideration for the money she saved out of her husband's earnings, and certainly it may be possible for her to show that some part of the money saved under this arrangement was obtained by her before the creation of some part of the bankrupt's indebtedness, either of which contingencies would at least to some extent bring her case within section 1907. These matters cannot be determined in a summary proceeding but should be settled in a plenary action.

The only trace found in the testimony as to who were creditors of the bankrupt indicates that they were Jefferson county and possibly John H. Whallen and James P. Whallen, the latter of whom testified. The manner in which the debt due Jefferson county arose was, to say the least, unusual. Among the offices the bankrupt held in 1910 and subsequently were two connected with the fiscal court of Jefferson county, namely, he was its clerk and also its auditor; the two places together yielding quite a good salary, which the fiscal court fixed and caused to be paid in monthly installments by Jefferson county. The claim was urged that those payments were made without authority of law, but Jefferson county would not repudiate what had been done nor sue Shea to recover the money he had thus obtained. Thereupon a

taxpayer, one W. F. Woodruff, on August 13, 1912, commenced an action to recover the money for the use and benefit of Jefferson county. The court of original jurisdiction dismissed the action, but on appeal the Court of Appeals reversed that ruling, and directed a judgment to be entered for the amount sued for. Accordingly, on June 25, 1913, a judgment was entered against the bankrupt for $11,025, with interest thereon from August 13, 1912, until paid, and costs. This indebtedness is the only one proved or allowed against the bankrupt's estate. The accrual from time to time of the various items of this indebtedness extended over a period of several years, during most of which time Mrs. Shea might well be supposed to know nothing of the unauthorized character of the acts of the fiscal court. And the amounts the bankrupt gave or paid to her in the meantime for her economical management of her household and other affairs under the agreement we have referred to extended over the same period. As we have intimated, these facts rather emphasize the necessity for a plenary action so that the questions may all be investigated in detail in order to ascertain how far, if at all, section 1907 of the Kentucky Statutes may be applicable.

After very careful consideration we have reached the conclusion that the claim of Mrs. Shea to all of the stock in the building and loan associations in her possession, and which stand in her name, is such as to make a summary proceeding improper, as well as outside of the jurisdiction of the referee, and to require for its recovery a plenary action by the trustee. First National Bank v. Chicago, etc., Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051. In saying this of course we express no opinion upon the merits of either side of any controversy between them respecting this property.

The order of the referee complained of in the petition for a review, so far as it relates to the stock in the building and loan associations, and so far as it relates to the money in bank, except the $234.54, must be reversed, and except to that extent the response is held to be sufficient, and the rule is discharged. Orders accordingly may be prepared.