## MARTIN et al. v. OLIVER.

(Circuit Court of Appeals, Eighth Circuit. June 28, 1919.)

### No. 196.

1. COURTS ⊂⊃497—CONFLICTING JURISDICTION—PRIORITY OF JURISDICTION.

   The general rule is that the legal custody of specific property by one court of competent jurisdiction withdraws it, so far as is necessary to accomplish the purpose of that custody, until the purpose is completely accomplished, from the jurisdiction of every other court.

2. BANKRUPTCY ⊂⊃199—LIENS OBTAINED THROUGH JUDICIAL PROCEEDINGS—INSOLVENCY OF DEBTOR.

   Under Bankr. Act, § 67f (Comp. St. § 9651), providing that all levies and other liens obtained through judicial proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him upon which an adjudication is made shall be null and void, and the property affected shall pass to the trustee, the insolvency of such person at the time the levy is made or the lien attaches, and the admission or proof of that insolvency, are indispensable conditions of an avoidance of such a levy or lien.

3. BANKRUPTCY ⊂⊃288(2)—SUMMARY JURISDICTION OF COURT—ADVERSE CLAIMANTS.

   A creditor who caused a levy to be made on personal property or a bankrupt seven weeks prior to the bankruptcy, and a receiver appointed on his petition by a state court of competent jurisdiction who took possession of the property and held it at the time of the adjudication, both claiming the validity of the levy, *held* adverse claimants, with a right to have their claim adjudicated in the plenary action.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⬤⟳391(1)—EFFECT ON SUIT IN STATE COURT.

A state court, having jurisdiction of the parties and subject-matter in a suit pending before it, in which property of the defendant had been levied upon and was in the hands of a receiver appointed by the court, and issue had been joined on the question of defendant's right to hold the property as exempt, *held* not deprived of jurisdiction to proceed to a determination of such issue by the filing of a petition in bankruptcy by defendant, where the bankruptcy proceedings were not brought to its attention by proper notice and pleadings.

5. BANKRUPTCY ⬤⟳20(1)—COURTS OF BANKRUPTCY—EQUITABLE PRINCIPLES.

A court of bankruptcy is a court of equity, and ought not to permit itself to be used for the purpose of perpetrating a fraud or attaining an inequitable result which a state court is successfully endeavoring to prevent.

Stone, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

In the matter of Lula M. Oliver, bankrupt. On petition of G. W. Martin and another to revise an order of the District Court. Reversed.

J. H. Evans and C. I. Evans, both of Booneville, Ark., for petitioners.

W. B. Rutherford, of Perryville, Ark., for respondent.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge. G. W. Martin and W. A. McNeill have presented to this court a petition to revise an order of the District Court which affirmed an order of the referee made on February 15, 1918, in the matter of the estate of Lula M. Oliver, a bankrupt, denying the motion of the petitioners to modify the order of the referee made February 8, 1918, wherein he determined that the bankrupt was entitled to certain personal property of the value of $459.50 as her exemptions, and ordered "that the said articles be delivered to the bankrupt forthwith" by striking from it the order for the delivery of the property to the bankrupt. When this order of delivery was made, and when Lula M. Oliver filed her petition in bankruptcy and was adjudged a bankrupt, this property was in the legal custody of the chancery court of Logan county, Ark., and in the actual possession of its receiver, Martin. A brief statement of the material facts disclosed by the record will aid in the consideration of the questions of law here presented.

On December 30, 1915, Lula M. Oliver and V. E. Oliver, her husband, were indebted and gave their promissory note to the Bank of Magazine for $412.60, and mortgaged certain town lots in Magazine to secure this debt. At the same time, without consideration and for their accommodation, the petitioner, W. A. McNeill, signed this note as their surety. On September 10, 1917, in a suit brought by the bank against Lula M. Oliver, V. E. Oliver, and W. A. McNeill

in the chancery court for the Southern district of Logan county, of the subject-matter of and the parties to which that court had jurisdiction, that court rendered a decree of foreclosure of that mortgage, of a sale of the mortgaged property, and of the issue of an execution against the defendants therein for any balance of the judgment not paid by the sale. The lots were sold and the proceeds applied, but there remained unpaid a balance of $272.27. On the 1st day of November, 1917, McNeill caused the bank to issue an execution on the judgment, and to levy it upon the personal property of Lula M. Oliver, including that here in controversy. On November 8, 1917, McNeill presented to the chancery court of Arkansas in the foreclosure suit a petition in which he alleged that, on the same day on which the decree of foreclosure was rendered, Lula M. Oliver made a chattel mortgage of all her personal property to one Kent Ruble, for the fraudulent purpose of hindering and delaying the collection of her debt to the bank; and that on the 1st day of November, 1917, when the levy was made, she and her husband were loading a car at Magazine with all their visible property, billing it in the name of Meade Oliver, a brother of her husband, and shipping it permanently out of the state of Arkansas with the fraudulent intent of defeating the collection of the balance of the judgment from this property, and compelling McNeill, her accommodation surety, to pay it. He prayed for the appointment of a receiver of all this personal property, and that at the final hearing the fraudulent mortgage of Kent Ruble be set aside, and all the property be sold to pay the balance of the judgment. On this petition the Arkansas chancery court appointed W. M. Martin receiver of this personal property on the 8th day of November, 1917, and ordered him to keep it safely, subject to the further order of that court. He immediately took possession of it and still holds it. Lula M. Oliver answered this petition of McNeill that all the property levied on and in the hands of Martin, the receiver, was exempt from levy or sale, but she did not deny any of McNeill's averments of her intents and attempts to defraud him and the bank. On February 8, 1918, upon the pleadings and proceedings in the main suit, the petition of McNeill, the answer of Lula M. Oliver, and oral testimony of witnesses while "V. E. Oliver and Lula M. Oliver were present in person and by their solicitor," as its decree recites, the chancery court of Arkansas found and decreed that on November 1, 1917, Lula M. Oliver and V. E. Oliver were shipping all their property, in the name of Meade Oliver, permanently out of the state, with the fraudulent intent and purpose of defeating the collection of the balance of the judgment therefrom, and compelling McNeill to pay it; that they made the chattel mortgage to Kent Ruble on February 10, 1917, for the fraudulent purpose of delaying and hindering the collection of the judgment; that Lula M. Oliver was not entitled to hold the property in question as exempt, and that her claim of its exemption was disallowed; that the mortgage to Ruble was set aside and held for naught; and that Martin the receiver should proceed to sell the property and apply the proceeds to the payment of the balance of the judgment.

Meanwhile, on January 23, 1918, while this property was in the legal custody of the Arkansas court, and in the actual possession of Martin, the receiver, Lula M. Oliver filed her voluntary petition in bankruptcy, was adjudged a bankrupt, and notices of this adjudication, and that the first meeting of creditors would be held on February 8, 1918, were mailed to the Bank of Magazine and McNeill, but neither of them ever appeared in the bankruptcy proceedings except to challenge the jurisdiction of the bankruptcy court and of its officers summarily to try the title to or to take this property from the chancery court or its officers. At the first meeting of the creditors on February 8, 1918, without notice to, or any application for, or demand of the property from the chancery court or its receiver, Martin, the referee made his determination that the property in controversy was exempt, and ordered it delivered to Lula M. Oliver.

When the petition in bankruptcy was filed, and when the adjudication was made on January 23, 1918, and when the order for the delivery of this personal property was made on February 8, 1918, this property was in the legal custody of the Arkansas chancery court, in a suit of which and of the parties to which it had plenary jurisdiction. When that suit was commenced, when Martin was appointed receiver, and when he took possession of the property, Lula M. Oliver was the owner of it, and the bankruptcy court and its officers took their interest in and title to it subject to the actual possession of the receiver of the chancery court, to that court's jurisdiction over it, and to the rights to it of the parties to the suit in that court. In that state of the case the order of the referee that the receiver of the state court and McNeill, the lienholding creditor, should deliver this property to Lula M. Oliver, who was one of the parties defendant in the suit in the state court, was erroneous for more than one reason.

[1] The general rule is that the legal custody of specific property by one court of competent jurisdiction withdraws it, so far as is necessary to accomplish the purpose of that custody, until the purpose is completely accomplished, from the jurisdiction of every other court; that the court which first acquires jurisdiction of specific property by the lawful seizure thereof, or by the due commencement of a suit in that court from which it appears that it is, or will become, necessary to a complete determination of the controversy involved or to the enforcement of the judgment or decree therein, to seize, to charge with a lien, sell, or exercise other like dominion over it, thereby withdraws that property from the jurisdiction of every other court, and entitles the former to retain the control of it requisite to effectuate its judgment or decree in the suit free from the interference of every other tribunal. Sullivan v. Algren, 160 Fed. 366, 370, 87 C. C. A. 318; Farmers' Loan & Trust Co. v. Lake Street Elevated Railroad Co., 177 U. S. 51, 61, 20 Sup. Gt. 564, 44 L. Ed. 667; Mound City Co. v. Castleman et al., 187 Fed. 921, 924, 110 C. C. A. 55. According to this general rule, the Arkansas court would have had exclusive jurisdiction to determine the question of Lula M. Oliver's claim to an exemption of this property and to hold and dispose of it according to its decision.

[2] But the bankruptcy law, section 67f (Act July 1, 1898, c. 541, 30 Stat. 564 [Comp. St. § 9651]), declares that all judgments, attachments, and other liens, obtained through legal proceedings, against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged bankrupt, and that the property affected shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall order the levy or other lien preserved. But under this section of the bankruptcy law the insolvency of the person against whom the legal proceedings are taken at the time the levy is made or at the time the lien attaches, and the admission or proof of that insolvency are indispensable conditions of an avoidance of such a levy or lien. Stone-Ordean-Wells Co. v. Mark, 227 Fed. 975, 979, 142 C. C. A. 433; Keystone Brewing Co. v. Schermer, 241 Pa. 361, 88 Atl. 657, 31 Am. Bankr. Rep. 279, 281, 282; Simpson v. Van Etten (C. C.) 6 Am. Bankr. Rep. 204, 205, 206, 108 Fed. 199, 201; Severin et al. v. Robinson, 27 Ind. App. 55, 60 N. E. 966; Collier on Bankruptcy (10th Ed.) 963, par. "e." And this record contains no evidence or proof of any such insolvency. On the other hand, the only debt of Lula M. Oliver which it discloses is the unpaid balance of the judgment $272.27, and she recited the value of the personal property she mortgaged to Ruble in September, 1917, to be $830, and declared that the other property she claimed as exempt after her adjudication in bankruptcy was worth $485. McNeill, the creditor, and Martin, the receiver, therefore had, when the petition was filed, and still have, the actual possession of the personal property in controversy under an order of a competent chancery court.

[3] They were and are claiming a lien thereon to secure a valid debt under a levy made seven weeks before the petition in bankruptcy was filed, and are also claiming that the property in their possession was not exempt when levied upon, and that Lula M. Oliver was not insolvent when the levy was made. McNeill and Martin are therefore adverse claimants of their lien and of this property, in the actual possession thereof, within the meaning of the bankruptcy law; they had and have the right to a trial and adjudication of their claim to and to the possession of it in a plenary action, according to the course of the common law, or in a suit in chancery, according to the principles and rules of equity; and neither the bankruptcy court nor any of its officers had any jurisdiction or authority as against them summarily, and without any notice or application to the state court for the delivery of the property, to try or adjudge any of the issues which conditioned the validity of the claims of Martin and McNeill, or summarily to order the receiver of the chancery court to deliver that property to Lula M. Oliver, the defendant, in the suit in the state court. In re Rathman, 183 Fed. 913, 925–928, 106 C. C. A. 253; Shea v. Lewis, 206 Fed. 877, 880, 124 C. C. A. 537; Jaquith v. Rowley, 188 U. S. 620, 621, 625, 626, 23 Sup. Ct. 369, 47 L. Ed. 620; In re M'Mahon, 147 Fed. 684, 685, 77 C. C. A. 668; Frank v. Vollkommer, 205 U. S. 521, 522, 526, 529, 27 Sup. Ct. 596, 51 L. Ed.

911; Carling v. Seymour Lumber Co., 113 Fed. 483, 484, 51 C. C. A. 1; In re Silberhorn (D. C.) 105 Fed. 899; In re Michie (D. C.) 116 Fed. 749; Bardes v. Hawarden Bank, 178 U. S. 524, 532, 533, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Louisville Trust Co. v. Comingor, 184 U. S. 18, 24, 25, 22 Sup. Ct. 293, 46 L. Ed. 413; Babbitt v. Dutcher, 216 U. S. 102, 103, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Murphy v. Hofman Co., 211 U. S. 562, 570, 29 Sup. Ct. 154, 53 L. Ed. 327.

An adverse claimant, whose lien attaches within four months prior to the filing of the petition in bankruptcy, and which is not conditioned by the insolvency of the debtor at the time such lien attached, has all the rights and privileges of an adverse claimant whose lien attached more than four months before the filing of the petition, because it is excluded from the provisions of section 67f, and is entitled to the trial of its claim in a plenary suit. Jones v. Springer, 226 U. S. 148, 155, 33 Sup. Ct. 64, 57 L. Ed. 161; In re Shea (D. C.) 211 Fed. 365, 369; Tripp v. Mitschrich, 211 Fed. 424, 426, 128 C. C. A. 96; Stone-Ordean-Wells v. Mark, 227 Fed. 975, 979, 142 C. C. A. 433.

[4] Again, even if the proposition just stated were not sustainable, and if the bankruptcy court had the jurisdiction and right to draw from the chancery court of Arkansas the possession of this property and the determination of the issues there pending concerning it, still the order of the bankruptcy court upon the receiver of the state court to deliver the property to Lula M. Oliver without first causing notice of the bankruptcy proceedings to be given to that court, and without causing a motion or application to be made to it for an order on its receiver to deliver over the property, was erroneous. That court had full jurisdiction of the parties to the suit before it, of the property in its possession, and of the issues, whether or not Lula M. Oliver was insolvent when the levy was made, and whether or not the property was exempt when the petition in bankruptcy was filed and the adjudication in bankruptcy was made. It proceeded with its suit, so far as this record shows, without any notice to it of the bankruptcy proceedings, or any motion, or application in or to it, regarding the possession or disposition of the property, either by the bankruptcy court or any of its officers, and rendered its final decree that the property was not exempt, that McNeill's lien upon it was valid, and that the property be sold to pay it. As the Supreme Court said in Jones v. Springer, 226 U. S. 148, 155, 33 Sup. Ct. 64, 65 (57 L. Ed. 161), "But in a case like the present, where, under an attachment levied before the petition was filed, the property had been put into the hands of a receiver, without notice of the petition, it is not true that all power and jurisdiction of the local court were ended before notice of the bankruptcy proceedings." If the bankruptcy court or its officers took any right or title to this property or to its possession, they took it from Lula M. Oliver pendente lite, and subject to the actual possession and lawful custody of that property in the chancery court. If they had any such rights the Arkansas court, on a suitable application or motion, would undoubtedly have preserved and enforced them.

Neither the bankruptcy court, nor any of its officers, nor Lula M. Oliver nor her counsel, both of whom, the final decree recites, were present when it was rendered, caused any such petition or application or motion to be made to the state court. If rendered its final decree, and no sound reason is perceived, under this state of facts, why that decree did not render the adjudication thereby that Lulu M. Oliver was entitled to no exemption of this property, and that it be sold to pay the balance of the judgment res adjudicata, and estop her, and all claiming under her, from asserting any claim to the possession or to any interest in this property, except to the surplus of the proceeds above the amount required to pay the balance of the judgment. Eyster v. Gaff, 91 U. S. 521, 525, 23 L. Ed. 403; Dimock v. Revere Copper Co., 117 U. S. 559, 564, 565, 6 Sup. Ct. 855, 29 L. Ed. 994; Muser v. Kern (C. C.) 55 Fed. 916; Stout v. Lye, 103 U. S. 66, 67, 69, 26 L. Ed. 428.

In Eyster v. Gaff, where a state court, notwithstanding the commencement of bankruptcy proceedings and an adjudication of bankruptcy after the suit was commenced, proceeded to final judgment, the Supreme Court said:

"The court in the case before us had acquired jurisdiction of the parties and of the subject-matter of the suit. It was competent to administer full justice, and was proceeding, according to the law which governed such a suit, to do so. It could not take judicial notice of the proceedings in bankruptcy in another court, however seriously they might have affected the rights of parties to the suit already pending.

"It was the duty of that court to proceed to a decree as between the parties before it, until by some proper pleadings in the case it was informed of the changed relations of any of those parties to the subject-matter of the suit. Having such jurisdiction, and performing its duty as the case stood in that court, we are at a loss to see how its decree can be treated as void. It is almost certain that if at any stage of the proceeding, before sale or final confirmation, the assignee had intervened, he would have been heard to assert any right he had, or set up any defense to the suit. The mere filing in the court of a certificate of his appointment as assignee, with no plea or motion to be made a party or to take part in the case, deserved no attention, and received none."

Smalley v. Laugenour, 196 U. S. 93, 96, 97, 25 Sup. Ct. 216, 49 L. Ed. 400, fails to rule this case on account of the many differences in the facts in the two cases, and, among others, because when the petition in bankruptcy was filed in the Smalley Case the property in controversy was, and it continued to be, in the possession of the bankrupt or of his successor in interest, or the bankruptcy court or its officers, until the subsequent execution sale, so that the execution creditors were not adverse claimants in the actual possession of the property at the time of the filing of the petition in bankruptcy, but the bankruptcy court, by virtue of the possession of the bankrupt and the subsequent possession coming to it, had jurisdiction to draw to itself the property, and summarily to determine the claims for liens upon it, while in the case in hand the creditor and receiver of the state court were adverse claimants in actual possession of the property in controversy when the petition in bankruptcy was filed and ever since.

Chicago, Burlington & Quincy R. R. Co. v. Hall, 229 U. S. 511, 33 Sup. Ct. 885, 57 L. Ed. 1306, does not rule this case for many other differences in the facts, and because in that case the insolvency of the bankrupt, at the times the liens and garnishments attached, was either admitted or proved, for the opening statement of the case declares such insolvency, so that in that case the lienholders never had any substantial claims, and were not adverse claimants in the light of section 67f, for their liens attached within four months of the filing of the petition in bankruptcy, when the bankrupt was insolvent. 229 U. S. 511, 514, 33 Sup. Ct. 885, 57 L. Ed. 1306. On the other hand, in the case at bar, the insolvency of the debtor when the lien attached was neither admitted nor proved, but both that issue and the issue of exemption, which necessarily involves it, were in litigation in the state court when the petition in bankruptcy was filed, and they have since been adjudged by that court against the bankrupt in the regular course of its procedure.

[5] Finally, a court of bankruptcy is a court of equity and it administers the law in the spirit of equity. One cannot read the record that was before the court below, and that is before this court, without a strong conviction that the petition for an adjudication in bankruptcy, and the application for the exemption of this property was another attempt of the bankrupt, like her making of the fraudulent mortgage to Ruble, and her endeavor to ship all her property permanently out of the state to Meade Oliver, by the use of the bankruptcy court, to hinder, delay, and to defraud the accommodation surety into paying her debt, and to prevent him from obtaining repayment. A federal court of equity ought not to permit itself to be used for the purpose of perpetrating a fraud or attaining an inequitable result which a state court is successfully endeavoring to prevent. Zeitinger v. Hargadine-McKittrick Dry Goods Co., 244 Fed. 719, 722, 723, 157 C. C. A. 167.

For the reasons which have been stated, perhaps at too great length, the order for the delivery of this property by the receiver of the state court to Lula M. Oliver should be stricken from the order of the referee of February 8, 1918. Accordingly let the order of the court below, made on March 20, 1918, affirming the order of the referee, entered February 15, 1918, denying the motion of the petitioners to modify the referee's order of February 8, 1918, determining the exemptions of Lula M. Oliver, and ordering that the articles thereby held to be exempt be delivered to the bankrupt forthwith, be revised and reversed, and let the court below make an order to the effect that the order of the referee of February 8, 1918, be modified by setting aside and striking from it the words, "and that the said articles be delivered to the bankrupt forthwith," and let the petitioners recover their costs.

TRIEBER, District Judge. I concur in the result upon the ground that notice of the bankruptcy proceedings should have been given to the chancery court by proper pleadings, when the cause was finally heard in that court.

I also concur in the result upon the ground that notice of the hearing before the referee, when the application for exemption was acted on, should have been given to the receiver of the state court, and Mc-Neill, the judgment creditor and plaintiff in the action pending in the chancery court.

STONE, Circuit Judge (dissenting). This is a petition to revise an order of the District Court confirming an order of the referee in bankruptcy denying a motion to modify an order allowing certain property as exemptions to the bankrupt, and directing the delivery thereof to her by the receiver of the state court, in whose custody it then was. The motion sought to annul that portion of the order directing such delivery. The petitioners here are the receiver and the judgment creditor in the state court.

This debtor is evidently seeking to avoid payment of an honest debt. She had before endeavored to do this in an unlawful and fraudulent manner by a bogus mortgage and by a concealed removal of her property. These attempts the court will promptly prevent. But she has also attempted to attain the same result in lawful methods, by claiming exemptions. The federal and state legislative policy is to prevent a creditor from completely stripping his debtor of all property, unless the debtor is willing that such may be done. This is founded upon the theory of public policy, which deems it more important that a debtor shall be left a pittance with which to sustain himself and family than that his debts shall be paid. No exemption can be claimed by an insolvent debtor without the object and result of avoiding payment of honest debts. But this avoidance the law sanctions to the extent of the permitted exemptions. The motive of the debtor in claiming exemptions or his prior attempts, however unlawful and reprehensible, have nothing to do with his exemption rights, unless expressly made material by statute. Therefore I think the prior questionable conduct of this debtor, and her evident desire and design to escape this indebtedness, have nothing to do with her right to claim and secure exemptions allowed by the statutes of Arkansas, operating directly, or, through the Bankruptcy Act, indirectly. In my judgment the Zeitinger Case is not applicable. That was an attempt by unfaithful corporate officers, who were about to be made responsible for their derelictions, to avoid that result by throwing into voluntary bankruptcy a solvent corporation. Undoubtedly the court could inquire into such a transaction, and prevent itself being used for such a nefarious purpose, where no real ground of bankruptcy existed. But it is not wrongful to claim legal exemptions and no attack is here attempted upon the propriety of the adjudication of bankruptcy, but it is expressly admitted that the referee acted properly in allowing this very property as exempt from creditors generally.

Admitting that the property was properly allowed to the debtor as exempt from her general creditors, the controversy is as to whether it was subject to the judgment lien of petitioners and as to what tribunal should determine that matter. There is no dispute what-

soever as to the character of this lien or the time it attached. It is a judgment levy lien, attaching less than four months prior to the filing of the petition in bankruptcy. Such a lien is nullified by the bankruptcy adjudication, under section 67f of the Bankruptcy Act, if, at the time of its attachment, the bankrupt were insolvent.

Petitioners claim that any adjudication made of that matter was not binding upon them because there was lack of due process of law, since they were not notified thereof, and had no legal opportunity to be heard. The finding of the referee in ruling on the motion to modify was that they had been duly notified of the adjudication of bankruptcy and of the creditors' meeting to be held February 8th. This is not questioned and therefore must be taken as true. There being no point as to the form of that notification, we must presume that it was in accordance with law, and followed the form prescribed by general order 38, form No. 18 (89 Fed. xxxvi, 32 C. C. A. ix), which provides "at which time the said creditors may attend * * * and transact such other business as may properly come before said meeting." This broad language has been held sufficient to authorize consideration, at such meeting, of the allowance of exemptions. In re Hilborn (D. C.) 104 Fed. 866. Also see Smalley v. Langenour, 196 U. S. 93, 25 Sup. Ct. 216, 49 L. Ed. 400. It would seem entirely proper at such time to make the allowance of exemptions where, under general order 15 (89 Fed. vii, 32 C. C. A. xviii), no trustee was to be appointed. Petitioners had notice of, and are bound by, any action which could properly be taken at that meeting, and their absence is due to their own voluntary act. Again, they had, in so far as they desired it, a sufficient day in court when they were accorded full hearing upon their motion to modify that order of the referee. At that time they raised no point of lack of due process at the previous hearing, but confined themselves to questioning the jurisdiction of the referee as to part of his earlier order.

Petitioners also claim that the referee made no adjudication upon the necessary facts of insolvency of the bankrupt at the time the lien attached, and residence of the bankrupt necessary to entitle to exemptions. It may be that no oral or written testimony as to either of these facts was presented to the referee, but he was authorized to find all necessary facts from the unopposed motion for exemption allowance. When petitioners filed their motion they made no such claim, and, after resting alone on their claim of lack of jurisdiction, they cannot now question the basis in fact of the ruling of the referee.

Finally they claim that the referee had no jurisdiction to order delivery of the property set off by him as exempt. They say that they are adverse claimants, through their judgment lien, to this property, and that their rights thereto cannot be determined in a summary proceeding before the referee, but are triable only in a plenary suit before some court of proper jurisdiction, which, in this instance, is, they say, the state chancery court, having custody of the property through the possession of its receiver.

The allowance of exemptions to a bankrupt is a necessary step in the administration of his estate by the bankruptcy court. No

other court can perform or interfere with this duty of the bankruptcy court. This jurisdiction is exclusive.

The extent of this jurisdiction is the determination that certain specified property falls within the state exemption laws, that the bankrupt is entitled to exemptions, and that the particular property shall be set aside as exempt from claims of his general creditors. The conclusion, therefore, is that the state chancery court here had no jurisdiction to decide the question of exemptions after the petition in bankruptcy was filed.

Such adjudication has no necessary connection with the determination of any special claims of title or interest in, or right against, that specific property by particular creditors or by others. Such adverse titles, interests, or rights can be decided only in plenary proceedings brought in the courts designated by section 23 of the Bankruptcy Act (Comp. St. § 9607). With exceptions not here material, such courts are those, federal or state, having general jurisdiction of the persons and subject-matter. Physical custody of the res by a court is a paramount ground of general jurisdiction. Therefore the state court here had exclusive jurisdiction to determine any adverse claims to this property in its possession. No such claim was presented to that court or decided by it. The only controversy in that court was whether the debtor was entitled to exemptions under the state law. The filing of the bankruptcy petition had taken from the state court, and placed in the bankruptcy court, all jurisdiction to determine debt exemptions. That court had no jurisdiction, therefore, to order a sale of that property by its receiver for the purpose of satisfying the earlier judgment.

But is this an adverse claim within the meaning of the Bankruptcy Act and judicial decisions when the circumstances here are considered?

The bankruptcy statutes are complete within themselves as to the disposition to be made of all of the property of the bankrupt. That disposition is divided into two general classes, namely, that which the debtor is to be allowed to retain and that which is to be divided among his creditors. All of it comes into the jurisdiction of the bankruptcy court. Even that allowed to the debtor (C., B. & Q. Ry. Co. v. Hall, 229 U. S. 511, 515, 33 Sup. Ct. 885, 57 L. Ed. 1306) comes there for segregation, identification, and appraisement. As said in the Hall Case (229 U. S. 516, 33 Sup. Ct. 887, 57 L. Ed. 1306), "custody and possession may be necessary to carry out these duties." If the custody is in the hands of some one opposing delivery thereof to the trustee under an adverse claim thereto, and if the establishment of such claim could or would defeat or modify the title coming to the trustee, it might be proper to determine that claim in a plenary suit, for the trustee should acquire and administer only such titles, rights, and interests in property as belong to the bankrupt. But if, admitting the claim in so far as it is alleged to be adverse, there is no right to possession as against the trustee shown, then obviously there is no necessity for such plenary action, because, in reality, no substantial ground has been alleged for withholding from the trustee the rightful

possession. Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; Clarke v. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555; Smalley v. Langenour, 196 U. S. 93, 25 Sup. Ct. 216, 49 L. Ed. 400; Lazarus v. Prentice, 234 U. S. 263, 34 Sup. Ct. 851, 58 L. Ed. 1305.

Measuring this controversy by this standard, what do we find? The facts are that the referee, in a proper manner, made the allowance of exemption; that no objection thereto has been made by any one, including these petitioners; there is no dispute that the exemptions covered all of the property of the bankrupt. The lien relied upon is an ordinary execution or judgment lien admittedly procured within four months of the filing of the bankruptcy petition. Such a lien is void if the debtor were insolvent when it was procured, whether the property be exempt or not. The petitioners nowhere allege that the debtor was then solvent. The record is barren of any such claim or issue, either in the bankruptcy court or in the state chancery court. But what would be the effect, even if it were admitted that the debtor was solvent when the lien affixed? That would in no wise affect the allowance of exemptions to the debtor. It is against just such levies and liens that exemptions protect the property of the debtor. If he had property beyond the amount allowable as exemptions, there might be some question as to the choice of property for exemption, or as to the survival of a lien against it as property beyond that allowable. No such situation is here. The undisputed facts are that the bankrupt was entitled to all of the scheduled property as exemptions, and that it was held by a state court receiver for the sole purpose of preserving it to satisfy an ordinary judgment debt belonging to a creditor listed by the bankrupt. Such a creditor could not possibly have a right to satisfaction from the property set aside, and the only property which could have been set aside, as exempt. The fact that steps had been taken through execution levy in no way affects the rights of the parties. There was no effective, substantial adverse claim. Therefore the summary order of the referee was correct.

What is really sought by petitioners is to have the state court usurp the exclusive jurisdiction of the bankruptcy court to decide and allow exemptions and to nullify its order in that matter.

I think the petition should be denied and the order affirmed.