## In re MAKI.

(District Court, W. D. Michigan, N. D. August 4, 1925. On Second Petition for Review February 3, 1926.)

**1. Bankruptcy ⚖➡136(2).**

Evidence *held* sufficient to show that bankrupt had at least constructive possession of money which he claimed he paid on his note held by his wife, and which he was ordered to surrender to trustee.

**2. Bankruptcy ⚖➡136(2)—Summary order requiring bankrupt to turn money over to trustee without filing of petition or opportunity to produce testimony in opposition held erroneous.**

Summary order requiring bankrupt to turn over money to trustee should be made only after fair hearing on petition specifically stating particular money or property alleged to be concealed or withheld, and such an order, made without petition or opportunity to produce testimony in opposition, was erroneous.

On Second Petition for Review.

**3. Bankruptcy ⚖➡136(2)—Improbable and unreasonable explanations by bankrupt of payments of large sums to relatives shortly before bankruptcy should be carefully considered.**

Improbable and unreasonable explanations by bankrupt of payments of large sums to relatives shortly before bankruptcy should be carefully considered in light of surrounding circumstances, and, where court is clearly convinced of its untruth, Bankruptcy Act should be vigorously enforced on application for order requiring surrender of assets.

**4. Bankruptcy ⚖➡136(2).**

Order requiring bankrupt to turn over money to trustee is proper if referee is satisfied beyond reasonable doubt that bankrupt had money in his possession or control at time of adjudication.

In Bankruptcy. In the matter of William Maki, bankrupt. On petition by the bankrupt for a review of an order of the referee to surrender assets. Order affirmed.

Edward W. Massie, of Ironwood, Mich., for bankrupt.

Edw. A. MacDonald, of Marquette, Mich., for trustee.

RAYMOND, District Judge. This matter is before the court on petition by bankrupt for review of an order made by the referee in bankruptcy on April 11, 1925, which order directed bankrupt to forthwith surrender and deliver to the trustee in bankruptcy the sum of $3,480.88.

[1] An examination of the proceedings before the referee in bankruptcy discloses that on the 16th day of August, 1924, bankrupt caused a financial statement of his condition to be printed and 200 copies thereof sent to various business concerns throughout the country. This financial statement showed a net worth of about $53,000. He thereby obtained credit in large amounts, and in November, 1924, conducted a sale which continued intermittently until he went out of business. His cash deposits during this sale were trifling in amount when compared with former like periods. His records of daily business for this period were destroyed by him, and his financial condition during this period apparently changed from a net worth of $52,985, to a condition of insolvency.

The trustee claims that there has been a fraudulent concealment of assets by the bankrupt and that the bankrupt has failed to account for upwards of $29,000 of cash receipts. The record contains much conflicting testimony and irrational explanations by bankrupt of dispositions of property which formerly belonged to him.

The transaction involved in this proceeding grows out of the claim made by bankrupt that on December 31, 1924, he paid to his wife the sum of $3,480.88 in payment of a promissory note of $2,500 given to her February 17, 1911. Bankrupt claims that in order to make this payment he drew from his account at the Gogebic National Bank of Ironwood, Mich., $3,000, and that he took $480.88 from his business to make up the balance. The note itself is not free from suspicion, and the fact of the existence of any obligation at all is rendered doubtful by the financial statement above referred to made August 16, 1924, in which it is stated that bankrupt then owed relatives nothing. A careful examination of the testimony in this case warrants the inference that there was before the referee sufficient evidence that there was in the possession of the bankrupt at the date of the order the sum of $3,480.88. The evidence does not show clearly that this money was then in the actual possession of the bankrupt, but it is sufficient to justify the conclusion that the bankrupt had at least constructive possession of this sum of money. See In re Shea (D. C.) 211 F. 365; In re Eddleman (D. C.) 154 F. 160.

[2] There is, however, a very substantial reason why the order of the referee cannot be affirmed. It appears that the first meeting of creditors in this matter was held before the referee in bankruptcy on April 7 and 8, 1925, and that at the close of the hearing on April 8th it was apparent that the taking of testimony could not be concluded, and the hearing on the general examination of bankrupt was thereupon adjourned to April 22, 1925. At the conclusion of the hearing on April 8th the attorney for bankrupt stated that he had

considerable testimony to put in to meet and rebut the testimony offered. Following this statement the attorney for trustee made a motion for an order directing the bankrupt to surrender and deliver to the trustee the sum of $3,480.88. The motion was argued, and the adjournment was then taken to April 22, 1925.

Three days after this adjournment and on April 11, 1925, the order here in question was made directing the bankrupt to forthwith surrender and deliver to the trustee the sum of money above stated. The record shows that on April 22, 1925, the wife of bankrupt was recalled for the purpose of giving further testimony regarding the sum of $3,480.88, and her testimony was objected to by the attorney for the trustee on the ground that an order had already been made by the referee in bankruptcy and that it was not subject to review by the referee. The referee in bankruptcy sustained this objection, and she was not permitted to testify.

It seems apparent from an examination of the authorities that the bankrupt was not in this proceeding, which necessarily involved his liberty, accorded the right to be informed of the precise claim against him and the right to a reasonable time to prepare his answer and to be heard. No petition was filed by the trustee, and no rule was served on the bankrupt to show cause why he should not be ordered to turn over assets. So far as appears from the record the only information which bankrupt had that any such order was to be asked was such as he might gather from attending at the first meeting of creditors, and before this hearing was completed and before bankrupt had had an opportunity to produce testimony in opposition thereto the motion for a summary order was made and granted.

In the case of Boyd v. Glucklich, 116 F. 131, 134, 53 C. C. A. 451, 454, it was said:

"Dispatch in judicial proceedings is commendable, but, in proceedings involving the liberty of a citizen, he has a right not only to be informed of the precise claim against him, but, after receiving that information, he has a right to a reasonable time to prepare his answer and present his proofs, and, lastly, to be heard by counsel on the law and facts of the case. While proceedings in bankruptcy may be summary, they should not be too summary; in other words, they should not be so summary as to deprive the bankrupt of those fundamental rights and privileges that belong to every citizen, among which are the right to be advised of the demand made upon him, and the right, after being so advised, to

have a reasonable time to prepare his defense and produce his witnesses. The bankrupt act does not do away with these rights, and no citizen forfeits them by being adjudged a bankrupt. The bankrupt act contemplates that proceedings in bankruptcy shall go forward with all reasonable dispatch compatible with the due and orderly administration of justice and a proper regard for the fundamental rights of the citizen. Construing the proceedings before the referee as we do, we think they were too summary in their character, and that it was against this summary proceeding the bankrupt asked to be heard, and that there was not accorded to him, and not intended to be accorded to him, by the referee, a reasonable time to answer the trustee's application, or to be further examined or to introduce evidence after being advised of the specific claims made against him by the trustee. The referee did not advise him that he had these rights, and the record does not show that he waived them, or intended to do so."

In the case In re Rosser, 101 F. 562, 41 C. C. A. 497, an order was made by the referee requiring the bankrupt to pay to his trustee a sum of money alleged to be in his possession and to constitute assets of his estate. The bankrupt had no notice that the examination would be used to obtain such an order, nor was he notified that such order was contemplated or had been applied for, nor given an opportunity to show cause against it. Later the court adjudged bankrupt in contempt and he was committed to jail. The question was raised that the proceedings in the court below did not give bankrupt such a notice of and such an opportunity to be heard upon the propriety of the order for the payment of money as to constitute due process of law. Judge Sanborn, in holding that bankrupt's constitutional rights had been violated, used the following language:

"While it is perhaps impossible, and is certainly unwise, to attempt to give a concise and comprehensive definition of the terms 'due process of law' and 'law of the land,' it is certain that notice to the party to be affected of the claim against him, and an opportunity to be heard upon it, are essential elements of every proceeding in a court of justice which can be said to constitute due process of law or to be in accord with the law of the land. 'Perhaps no definition,' says Judge Cooley, 'is more often quoted than that given by Mr. Webster in the Dartmouth College Case: "By 'law of the land' is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial.

The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society." ' Cooley, Const. Lim. 431. The basic principle of English jurisprudence is that no man shall be deprived of life, liberty, or property without due process of law, without a course of legal proceedings according to those rules and forms which have been established for the protection of private rights. Such a course must be appropriate to the case and just to the party affected. It must give him notice of the charge or claim against him, and an opportunity to be heard respecting the justice of the order or judgment sought. The notice must be such that he may be advised from it of the nature of the claim against him, and of the relief sought from the court if the claim is sustained. And the opportunity to be heard must be such that he may, if he chooses, cross-examine the witnesses produced to sustain the claim, and produce witnesses to refute it, if a question of fact is in issue, and, if a question of law is presented, the opportunity to be heard must be such that his counsel may, if they desire, argue the justice and propriety of the judgment or order proposed. Judicial orders or judgments affecting the lives or property of citizens in the absence of such a notice and opportunity to the party affected are violative of the fundamental principle of our laws, and cannot be sustained." In re Rosser, 101 F. 562, 567, 41 C. C. A. 497, 502.

In the case of In re Ruos (D. C.) 164 F. 749, it was held that an order by the referee requiring the bankrupt to turn over money to his trustee should be made only after a hearing on petition therefor making definite averments on the subject and offering a definite issue upon which both parties may adduce evidence.

In the case of In re Frank, 182 F. 794, 105 C. C. A. 226, an order requiring the bankrupt to turn over property to his trustee without giving him full opportunity to appear and cross-examine witnesses was held erroneous. See, also, In re Atwater (D. C.) 227 F. 511.

A careful examination of this matter convinces the court that indispensable requisites of a fair hearing in accordance with the fundamental principles set forth in the foregoing authorities were not accorded to bankrupt. An order committing bankrupt to jail for contempt could not, for these reasons, be sustained. The interests of both creditors and bankrupts demand that such proceedings shall be entirely regular. A petition should have been filed containing definite averments, stating specifically what sum of money or

what particular property the bankrupt was supposed to be concealing or withholding, and the bankrupt should have had a full and fair opportunity to be heard in his own behalf and to make his defense. Because of the failure to accord him his fundamental rights in these particulars the petition to revise must be sustained and the order of the referee annulled.

An order will be made remanding this matter to the referee in bankruptcy, with directions to permit the trustee, if he shall be so advised, to file a petition particularly specifying the sum or sums of money which he claims the bankrupt wrongfully withholds, and that reasonable notice be given to bankrupt of the hearing on the petition, and that the bankrupt be permitted to answer the same under oath and to submit to a further examination under oath if the court shall so direct, and that both parties have leave to introduce such further testimony as they may be advised.

### On Second Petition for Review.

This matter has previously been before the court, and on August 4, 1925, an opinion was rendered directing that an order be entered permitting the trustee to file a petition against bankrupt containing specific averments as to moneys alleged to be withheld, that reasonable notice be given to bankrupt, and that he be permitted to answer and submit further testimony. The order was duly entered, the suggested proceedings have been taken, and the matter is again before the court on petition by bankrupt for review of the referee's order of October 28, 1925, containing the same directions as the former order, and based upon substantially the same findings of fact.

A careful examination of the testimony submitted has been made, and it is the judgment of the court that the order of the referee was justified by the evidence. The reasons for this conclusion sufficiently appear in the former opinion. It is contended that application of the principles stated in Re Haring (D. C.) 193 F. 168, must lead to a different conclusion. In that case it is expressly stated in the opinion:

"There is no proof of any goods having been taken from the store except for the purpose of sale elsewhere. No moneys are traced directly into the possession of the bankrupt except such as were deposited in bank or received from the clerk at Sand Lake. The moneys deposited in bank are all accounted for."

In the present case moneys are traced directly to the possession of bankrupt. About $4,000 came into his hands in cash by with-

drawals from the bank in December, 1924. He became bankrupt on March 10, 1925. His claim that he paid $3,480.88 to his wife in cash is expressly denied by her. The testimony of both bankrupt and his wife concerning the note, the time of its payment, and the time and manner of making indorsements of interest payments upon it, is discredited by an examination of the note itself. To say that the court is bound to accept contradictory and unreasonable explanations of the transaction as true, when the only rational conclusion is that it is untrue and extremely improbable, is to place a premium upon fabrication and perjury. The court ought not to allow itself to be deceived by mere colorable evasions.

[3] Improbable and unreasonable explanations by bankrupt of payments of large sums of money to relatives shortly before bankruptcy should be carefully considered in the light of the surrounding circumstances, and, where the court is clearly convinced of its untruth, the provision of the Bankruptcy Act should be vigorously enforced. See In re Katz (D. C.) 216 F. 949; In re Feldser (D. C.) 134 F. 307; In re Kane (D. C.) 125 F. 984, and cases cited in former opinion.

[4] The referee was not required to have certain proof that the cash was actually in bankrupt's possession or subject to his control at the time of adjudication. The order was proper if he was satisfied beyond a reasonable doubt from the evidence that the bankrupt had the money in question in his possession or control at that time. See In re Goodman (D. C.) 196 F. 566; In re Gerstel (D. C.) 123 F. 166; In re Kane (D. C.) 125 F. 984; In re Henderson (D. C.) 130 F. 385.

An order will be entered affirming the order of the referee.