## Case No. 3,648.

### DAVIS et al. v. RAILROAD CO. et al.

[1 Woods, 661;[1] 13 N. B. R. 258.]

Circuit Court, N. D. Florida.    May 21, 1873.

BANKRUPTCY — PROPERTY HELD BY RECEIVER OF STATE COURT — PETITION IN BANKRUPTCY BY CORPORATION — RIGHTS OF STOCKHOLDERS — RES JUDICATA.

1. A receiver in possession of mortgaged premises under order of a state court of chancery, in proceedings for foreclosure, prior to commencement of proceedings in bankruptcy, cannot be dispossessed by order of the district court in the bankruptcy proceedings.

[Cited in Kimberling v. Hartly, 1 Fed. 575.]

2. Such possession is a lawful one under a specific and vested lien, and can only be interfered with by the assignee in bankruptcy by payment and redemption of the mortgage.

3. To deprive a man of his just possession under a specific lien would often involve a sacrifice of his rights.

4. A sale made by an assignee in bankruptcy of property thus unlawfully taken from a receiver (due notice being given of the illegality at the time of the sale), will be set aside, and the purchase money will be ordered to be returned.

5. A contumacious resignation by officers of a company can not prevent the company from filing a petition in bankruptcy, if a majority of shareholders authorize it to be done.

6. The district court having necessarily passed upon the question of the authority of the officers to file the petition in bankruptcy, it cannot be disputed in a collateral proceeding.

On the 1st of June, 1867, Davis and Jandon, trustees of the first mortgage of the Alabama & Florida Railroad Company, filed a bill to foreclose the same in the Escambia county court, of the state of Florida, which court on the 11th of July following, appointed Bushnell receiver, who took possession of the railroad and property mortgaged. Afterwards, on the 13th of July, 1867, the railroad company, by its officers, filed a petition in bankruptcy and was declared bankrupt by the district court of the United States for the northern district of Florida, and Hall was appointed assignee in December. The district court, on application of the assignee, ordered the mortgaged property to be taken out of the hands of the said receiver, and delivered to the assignee, which was done by the marshal of the United States, against the protest of the receiver. Afterwards, in February, 1868, the same court ordered the property to be sold as perishable property. The sale took place on the 25th of March, 1868, the trustees of the mortgage giving public notice that they claimed the proceedings to be illegal. William A. Richardson and others became the purchasers, and became organized under the name of the Pensacola & Louisville Railroad Company.

The trustees and their receiver then filed this petition for a revision of the proceedings of the district court, and for setting aside the sale. The hearing was postponed from

time to time by arrangement, and finally on the 24th of April, 1871, Circuit Justice Bradley made a decree, declaring: First. That the mortgage was a first lien on the property and franchises described therein, and that the possession of the receiver under the order of Escambia county court was a lawful possession at and before the commencement of proceedings in bankruptcy, of which it was not competent for the district court in bankruptcy to deprive him. Second. That the order requiring the receiver to surrender the property be set aside. Third. That the question whether the sale in bankruptcy should be set aside and what title, if any, the respondents acquired thereby, be reserved for further consideration; and the assignee was restrained from collecting the balance of the purchase money. This decree was made without prejudice to any equitable claim which the Pensacola & Louisville Railroad Company might have for reconstructing and furnishing the railroad, and without prejudice to the claim of the trustees for mesne profits.

The reserved questions were subsequently (in November, 1872) argued by—

Clarkson N. Potter and C. C. Yonge, for petitioners.

A. G. Thurman, of Ohio, for respondents.

The petitioners, amongst other things, insisted that the proceedings in bankruptcy were a nullity, because no officer of the company had been duly authorized by a vote of the majority of the corporators present at a legal meeting called for that purpose, to present any petition for adjudication of bankruptcy. The facts bearing on this point are stated in the opinion.

BRADLEY, Circuit Justice. The questions now to be disposed of are—First, whether the sale of the property made by the assignee was valid notwithstanding the illegality of the order under which he acted; and second, what should be done with the proceeds of said sale. The petitioners contend that the sale was void for two principal reasons: First, because the bankruptcy proceedings were void in their inception; and second, because the district court had no authority to take the property out of the hands of the receiver appointed by the state court.

The first ground is based on the allegation that "no officer of the (bankrupt) company had been duly authorized by a vote of a majority of the corporators present at any legal meeting called for the purpose, to present any petition praying for such adjudication, as required by the bankrupt act [of 1867 (14 Stat. 517)]." I do not attach any importance to the objection of the respondents that this question cannot be raised, because not passed upon by the district court. It seems to me that the district court could not make a decree of bankruptcy without passing upon it. It lay at the foundation of the proceed-

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

ings, and the decision of the district court on the point cannot properly be brought in question collaterally. However, having looked at the evidence in the case, I cannot see any good ground for the position. If any irregularity occurred in the call for the stockholders' meeting, by which the direction was given to institute the proceedings, it arose from the contumacy of certain directors who resigned their offices for the purpose of embarrassing the stockholders. The city of Pensacola owned more than five-sevenths of the stock of the company, and it is sufficiently clear that the city authorities took all practicable measures for having a fair stockholders' meeting and vote on the subject; and that the vote of the city was positive in favor of the bankruptcy proceedings, and of the instruction to the president of the railroad company to institute the same. I shall, therefore, assume that the proceedings in bankruptcy were regularly instituted.

The question then recurs, what authority had the bankrupt court to take the property in question out of the possession of the receiver appointed by the state court? The former order in this case, declaring the possession of the receiver lawful, and directing the property to be returned to him, was based on the fundamental principle, that no proceeding in bankruptcy can deprive creditors of their just possession of property held as security for a debt, without discharging the debt. The possession of the receiver, under authority of the state court in virtue of the first mortgage, was the possession of the mortgagees, and could not be interfered with without liquidating the debt. This point has been recently decided by the supreme court of the United States, in the case of Marshall v. Knox, 16 Wall. [83 U. S.] 551. The respondents insist that by the law of Florida, a mortgagee cannot take possession of the mortgaged premises until he has foreclosed the mortgage, and become the purchaser. Whilst this may be the general law of that state, so far as regards the legal right of entry, and the maintaining of ejectment on the mortgage alone; yet, a court of equity, after proceedings have been instituted for the foreclosure of the mortgage, has an undoubted right to take possession of the premises for the preservation of the fund and the protection of the lien thereon. Besides which, the express covenants and stipulations in the mortgage given in this case authorize the trustees to take possession or to have a receiver appointed within a certain time after default shall be made in the payment of interest or principal.

The rights which supervene upon a mortgage or other specific lien, accompanied with possession before proceedings in bankruptcy, are very different from those arising from proceedings in state courts in cases of general insolvency. A mere insolvent proceeding, or a proceeding of that nature, and possession of the bankrupt property taken in pursuance thereof is antagonistical and repugnant to the bankrupt law, and will be avoided by regular proceedings in bankruptcy. But a proceeding to enforce a mortgage or other specific lien involves the right of property, and possession in pursuance thereof, legally or judicially, taken before proceedings in bankruptcy, cannot be interrupted by those proceedings. Hence, the action of the bankrupt court, in taking the property in question out of the hands of the receiver, was regarded as unwarranted and illegal. But the respondents' assignee contended that the sale should stand, although the order for sale was illegal. I do not think so in such a case as this. It is analogous to that of a sale by a sheriff on execution against A., of property belonging to B. The sale is void. The owner may recover his property of the purchaser. So may the trustees in this case. They ought not to be compelled to take the proceeds arising from the unlawful sale. Their rights might, in this way, be wholly sacrificed. The respondents, however, insist that no motion was made before the district court to set aside the sale by the assignee, and, therefore, the matter cannot be considered on this petition. But the sale was made in consequence of a special order of the district court, and that order is brought directly in question. Satisfied that the order, and the sale made in pursuance of it, were both illegal, I can see no difficulty in decreeing them both to be void.

The question then arises as to the disposition to be made of the purchase money paid or secured to be paid by the respondents. The purchasers insist, that it should be returned; the assignee, that it should be retained by him for the benefit of the general creditors. From an examination of the evidence, it seems clear that the assignee assumed to sell the property clear of the mortgage. He did not profess to sell the mere equity of redemption. The respondents in their answer claim that the sale was made free from the lien of the mortgage. They claim that the mortgage was void. And whilst it is true, that the petitioners gave notice at the time of the sale, that it would be subject to their lien, the assignee and the purchasers did not act on this view. The latter never intended to purchase subject to the lien, but clear of the lien. Had the receiver sold the property subject to the lien of the first mortgage, the amount bid for it by the respondents would have been payable by them, and would have been a proper asset of the bankrupt company's estate. But as they did not sell it in that manner, but sold it as unincumbered property, so far as the first mortgage was concerned, and as that was a clear mistake, since the first mortgage was a valid lien and absorbed the entire property, the sale ought to be held invalid, and the proceeds of the sale ought to be returned to the purchasers. This is clearly the justice of the case, and in my judgment the law is not con-

trary thereto. There ought to be a decree, therefore, setting aside the sale made by the assignee in bankruptcy, and directing a return of the purchase money to the purchasers. This decree should include all sales of property covered by the first mortgage, and in the actual or constructive possession of the receiver appointed by the court of Escambia county. Other sales, if any there were, are not subject to question in this proceeding. The proceeds belong to the estate of the bankrupt corporation. As the purchasers had notice of the first mortgage, and knew that the holders thereof intended to assert their rights, the costs and expenses of the assignee and others, in reference to the custody and sale of the property, should be deducted from the purchase money to be returned. Let a decree be framed in accordance with these views.