## Case No. 7,073.

### In re IRVING et al.

.[8 Ben. 463; 14 N. B. R. 289; 2 N. Y. Wkly. Dig. 500.] [1]

District Court, S. D. New York.   June 21, 1876.

F. Fellowes, for the motion.

D. A. Hawkins, opposed.

BLATCHFORD, District Judge. This is a proceeding in involuntary bankruptcy. The creditors' petition was filed on the 5th of February, 1876, and an order to show cause was issued on that day, returnable on the 12th of February, 1876. It not having been served, a new order to show cause was issued, returnable on the 19th of February,

1876. On the latter day, an adjudication of bankruptcy was made on default of the debtors to appear. On the filing of the petition, an order was made, under section 5024 of the Revised Statutes, that an injunction issue to restrain the debtors and one Dingee, "in the meantime, and until the hearing and decision of the said petition, and until the further order of this court," from levying upon or making any transfer or disposition of the property of the debtors not exempted by the bankruptcy act [of 1867 (14 Stat. 536)] from the operation thereof, "and from all interference therewith, except to preserve the same;" and on the same day an injunction was issued, directed to the debtors and to Dingee, commanding them "to desist and refrain, until the hearing and decision on the said petition, and until the further order of the court," from making any transfer or disposition of the property of the debtors not exempted by the bankruptcy act from the operation of said act, "and from any interference therewith except to preserve the same, until the further order of the court." This injunction was served on Dingee, personally, on the 14th of February, 1876. An assignee having been duly appointed, he represented to this court, by affidavit, on the 3rd of May, 1876, that Dingee had, prior to the 14th of February, 1876, commenced the foreclosure of two mortgages held by him on property owned by Mary Irving, one of the bankrupts; that, on the 12th of February, 1876, a decree of foreclosure and sale, in the usual form, was entered in the action brought for such purpose, in the supreme court of the state of New York; that, subsequently to the service of said injunction, and on or about the 8th of March, 1876, Dingee caused said property to be sold at public auction, and purchased it himself at such auction sale for the sum of $100; that the report of sale had been filed, and Dingee had requested the entry of a judgment for deficiency against Mary Irving, one of the bankrupts, for $22,115.42; and that Dingee was threatening to convey the property. Thereupon, an order was made by this court, that Dingee show cause, before it, why he should not be punished for contempt of court in disobeying said injunction. On the return of such order the assignee and Dingee consented in writing that it be referred to a commissioner, to ascertain and report whether any contempt had been committed, and, if so, what were the extent and nature of such contempt, and an order was made thereon to that effect. The referee has taken testimony in the matter and reported it. It shows the foregoing facts. It also shows, that the assignment to the assignee was made on the 24th of April, 1876; that the property referred to was sold under said decree of foreclosure on the 8th of March, 1876, and was purchased by Dingee for $100, subject to a prior mortgage and interest on it and taxes; that Dingee took a deed of the property; and that thereupon judgment was

---

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 2 N. Y. Wkly. Dig. 500, contains only a partial report.]

entered against the mortgagor, Mary Irving, one of the bankrupts, for $22,115.42, the deficiency on the sale. The report finds that Dingee thereby committed a contempt of court in disobeying said injunction; that the nature and extent of such contempt consisted in proceeding to sell the mortgaged property, and to bid it in, and to take a deed for it, and to enter said judgment; but that Dingee acted in good faith, under the advice of counsel, on which he relied, and that he had no wilful intention to disobey or disregard said injunction.

It is contended that the injunction ceased to operate when the adjudication of bankruptcy was made on the 19th of February, 1876. I am of opinion that this point is well taken. The injunction was issued under section 5024 of the Revised Statutes, which provides, that, on the filing of the petition in involuntary bankruptcy, "if it appears that sufficient grounds exist therefor, the court shall direct the entry of an order requiring the debtor to appear and show cause, at a court of bankruptcy to be holden at a time to be specified in the order, not less than five days from the service thereof, why the prayer of the petition should not be granted;" and that "the court may also, by injunction, restrain the debtor, and any other person, in the meantime, from making any transfer or disposition of any part of the debtor's property not excepted by this title from the operation thereof, and from any interference therewith." The words "in the meantime," cannot be construed to mean a time later than the time an adjudication of bankruptcy is made on the petition, in case one is made. The injunction issued in this case was limited to the time of "the hearing and decision on the said petition," and, when the adjudication was made, the decision had been made. The words "and until the further order of the court," in the injunction, cannot, I think, be so construed as to give a duration to the injunction, beyond the duration authorized by section 5024, or beyond that distinctly implied by the words "until the hearing and decision on the said petition." In re Moses [Case No. 9,869].

There is nothing in this view that is in conflict with the decisions of this court (affirmed by the circuit court, on review) in Hyde v. Bancroft [Case No. 14,513] and in Re Ulrich [Id. 14,328]. There the injunction was issued after adjudication, on a special petition presented by the petitioning creditors, before an assignee was appointed. It was not an injunction issued under the limitation imposed by section 5024.

If it be suggested, that, because of the use, in the injunction, of the words "and until the further order of court," the injunction may properly be regarded as one issued not only under section 5024, but under the authority by virtue of which the injunction in Re Ulrich [supra] was issued, and that it was intended to have the injunction continue in force after the adjudication, the sufficient answer is, that the order for injunction and the injunction show, on their faces, that the injunction was issued wholly under section 5024.

But, it is urged, that, independently of the injunction, the proceedings by Dingee were a contempt of this court, because the petition in bankruptcy was filed on the 5th of February, 1876, and the decree of the state court was not made until the 12th of February, 1876, and the adjudication of bankruptcy was made on the 19th of February, 1876, and the sale of the property and the entry of the judgment for deficiency were made thereafter; that, from the 5th of February, 1876, all the property of the debtors was in the hands of this court; and that the issuing of the order to show cause on that day was a sequestration of such property, conditional until the adjudication, and, after that, absolute. The principle is invoked, that this court has the power to punish for contempt those who interfere with the admitted property of a bankrupt, by selling it after adjudication, such property being thereafter in the custody of this court. This principle is the one recognized and applied by this court and by the circuit court for this district, in the case of In re Vogel [Case No. 16,982]. But this principle has its limitations. In Eyster v. Gaff, 91 U. S. 521, a suit to foreclose a mortgage was begun in 1868. On the 9th of May, 1870, a voluntary petition in bankruptcy was filed by the mortgagor, he was adjudged a bankrupt on the 11th of May, 1870, and an assignee was appointed on the 4th of June, 1870. A decree of foreclosure was rendered on the 1st of July, 1870, by virtue of which a sale took place, under which the plaintiffs in the suit claimed title. They brought ejectment against a tenant who held under the bankrupt, and the defence was, that all of the foreclosure proceedings which took place after the adjudication of bankruptcy and the appointment of the assignee were invalid. The plaintiffs recovered, and the defendant took the case, by writ of error, to the supreme court of the United States, the decision of which court in it is reported as above. That court held, that, as the foreclosure suit was commenced against the bankrupt when the title or equity of redemption to the mortgaged property was in the bankrupt, the assignee in bankruptcy took his interest in the property pending suit, and was bound by the proceedings, and his rights were foreclosed by the decree and the sale; that, jurisdiction of the suit having attached, such jurisdiction was not ousted by the transfer of the bankrupt's interest in the property; that, although the assignee was not made a party to the suit, he was bound by the proceedings which took place in it after his appointment; and that the adjudication of bankruptcy did not divest the court in which the foreclosure suit was pending, of jurisdiction over it. If an

adjudication of bankruptcy does not divest a state court of jurisdiction over a pending suit for the foreclosure of a mortgage on property of the bankrupt, a fortiori, the mere filing of a petition in involuntary bankruptcy against the mortgagor does not divest such jurisdiction. In the present case, the decree of foreclosure was made before the adjudication of bankruptcy was made. The adjudication of bankruptcy did not divest the state court of its jurisdiction, or deprive the plaintiff in the foreclosure suit of his right to execute the decree of foreclosure by a sale of the property. The sale was made before the assignment to the assignee was made. There was no contempt of the authority of this court in executing the decree of sale, so far as to sell the property, and give a deed for it, in the absence of an injunction from this court. Nor was there any contempt committed in entering the judgment for deficiency, and there was no injunction against entering such judgment. But I do not intend now to decide that the judgment can be recognized by this court in these proceedings as a subsisting judgment, as against the assignee, or the estate in his hands, or the creditors thereof, or the bankrupt, Mary Irving, against whom it was entered. I only intend to decide, on the question of contempt, that the entering of such judgment was not a violation of any injunction, or an interference with any of the property of such bankrupt, Mary Irving. The proceedings for contempt are dismissed, with costs to be paid by the assignee out of the funds of the estate of the bankrupt, Mary Irving, in his hands.