## In re DAYTON COAL & IRON CO., Limited.

(District Court, E. D. Tennessee, S. D. August 2, 1922.)

### Nos. 1598, 1600.

1. **Judgment ☞677—All general creditors are bound by decree on creditors' bill.**

A general creditors' bill being a representative or class suit, not only the complainants, but all other general creditors represented by them, whether or not made parties thereto, are bound by the decrees therein.

2. **Bankruptcy ☞156—Trustee bound by decree which is binding on general creditors.**

A decree binding on general creditors of the defendant is also binding on the trustee in bankruptcy of defendant appointed in proceedings instituted pendente lite.

3. **Bankruptcy ☞101—Court vested with possession only of property in possession or under control of bankrupt.**

The custody or constructive possession of the debtor's property which vests in the bankruptcy·court by the filing of the petition extends only to the property then held by or for him of which the court might summarily take possession.

4. **Bankruptcy ☞20(2)—Filing of petition does not oust actual possession of state court.**

Where a state court in a creditors' suit has taken actual possession of a debtor's property by its receiver, the filing of a petition in bankruptcy against the debtor does not, ex propria vigore, operate to transfer con-

structive possession of the property to the bankruptcy court or to terminate the jurisdiction of the state court to administer the property.

**5. Evidence ☞43(4)—State court cannot take judicial notice of bankruptcy proceedings against a party before it.**

A state court which has acquired jurisdiction of a debtor's property cannot take judicial notice of bankruptcy proceedings against him in another court, and it is its duty to proceed to a decree as between the parties before it unless by some proper pleading in the case it is informed of the changed relations of any of those parties to the subject-matter of the suit.

**6. Bankruptcy ☞20(1)—Priority of jurisdiction as between state and bankruptcy court.**

The prior jurisdiction acquired by a state court in insolvency or winding up proceedings is not ipso facto superseded by the filing of a petition in bankruptcy against the defendant, but continues under the rule of comity until the pendency of the bankruptcy proceedings is brought to its notice and a request made to it by the bankruptcy court or a duly authorized officer thereof for delivery of possession of the property of defendant.

**7. Bankruptcy ☞213—Proceedings do not affect suit to foreclose valid mortgage.**

Where, at the time of the filing of a petition in bankruptcy, the property of the alleged bankrupt was in the possession of a state court through its receiver appointed under a creditors' bill, that court had jurisdiction to entertain a cross-bill by a mortgagee to foreclose a mortgage on the property, to which the defendant mortgagor and the receiver were made parties, and, at least in the absence of any demand for possession of the property by the bankruptcy court, to proceed to decree on such cross-bill; and such jurisdiction also vested in the Supreme Court of the state on an appeal from the decree.

**8. Judgment ☞672—Persons concluded.**

Creditors who appeared in a creditors' suit and contested the validity of a mortgage on property of the defendant, set up by a cross-bill, are bound by the decree therein sustaining the validity of the mortgage.

In Bankruptcy. In the matter of Dayton Coal & Iron Company, Limited, bankrupt. On petition of Central Trust Company of New York, the Bank of Scotland, and the Commercial Bank of Scotland, Limited, to review order of referee. Order reversed.

Sizer, Chambliss & Chambliss, of Chattanooga, Tenn., and Joline, Larkin & Rathbone and J. M. Perry, all of New York City, for Trust Company and Scottish Banks.

Brown, Spurlock & Brown and J. M. Trimble, all of Chattanooga, Tenn., for trustee in bankruptcy.

Allison, Lynch & Phillips, of Chattanooga, Tenn., for Bank of Montreal and other creditors.

SANFORD, District Judge. This is a petition to review an order of the referee adjudging that a certain mortgage or trust deed, executed by the Dayton Coal & Iron Co., Ltd., the bankrupt herein, to the Central Trust Co. of New York, securing certain debentures principally held by the Bank of Scotland and Commercial Bank of Scotland, Ltd., is not a valid lien on the property of the bankrupt.

The general situation presented is this:

The mortgage was executed by the Dayton Company, a British cor-

poration, in October, 1902, and conveyed its real estate and other property in Tennessee and elsewhere to the Trust Company, as trustee, to secure an issue of debenture bonds.

After there had been default in the debentures authorizing the Trust Company to foreclose the mortgage, certain creditors of the Dayton Company filed a general creditors' bill against it in the Chancery Court of Rhea County, Tennessee, in which its manufacturing plant and principal properties were situated, for the purpose of winding up and administering its affairs; to which the Trust Company was made a defendant. In an amended bill to which the Scottish Banks were also made defendants, it was alleged, in general terms, that the Trust Company's claim to priority under its mortgage was illegal and invalid. Thereupon, the Dayton Company having been served with process and entered its appearance, on motion of the complainants the Chancery Court appointed a receiver, who was directed to take possession of all the properties of the Dayton Company and carry on its business. He immediately took possession of such properties, including the mortgaged property herein involved; and he and a co-receiver subsequently appointed thereafter administered the property under orders of the court.[1] The bill was sustained by the Chancery Court as a general creditors' bill, and creditors ordered to file their claims in the cause. Many creditors intervened and the Chancery Court continued to exercise complete jurisdiction in the administration of the affairs of the Company; the business of the Company being in part carried on, a portion of the property sold, taxes and insurance paid, and other general administrative orders made in the cause.

In the meantime, five days after the appointment of the receiver in the Chancery Court, certain other creditors filed in this court an involuntary petition in bankruptcy, No. 1598, against the Dayton Company; and ten days later another involuntary petition in bankruptcy, No. 1600, was filed against it herein by other creditors. Two days later certain of these petitioning creditors, in my absence from the Division, applied to the referee in bankruptcy, under sections 2 (3) and 38 (3) of the Bankruptcy Act (Comp. St. §§ 9586, 9622), for the appointment of a receiver to take possession of the property of the Dayton Company. This application was resisted by the Dayton Company and the Chancery Court receivers and was denied by the referee on the ground that in view of the custody of the assets by the Chancery receivers it did not appear that there was an absolute necessity for the appointment of a receiver by the bankruptcy court. And no step was thereafter taken by the bankruptcy court to affirmatively assert its jurisdiction over the property of the Dayton Company or to obtain actual possession thereof until after an adjudication had been made in the bankruptcy causes, as hereinafter stated. Nor was any notice given to the Chancery Court, in the meantime, of the pendency of the bankruptcy proceedings.

Subsequently a trial in this court of the petition in bankruptcy in cause No. 1600 resulted in a judgment dismissing the petition. This

---

[1] Certain assets of the Dayton Company in Georgia were taken in charge by a receiver appointed in ancillary proceedings in that State.

judgment was, on writ of error, reversed by the Circuit Court of Appeals. James Supply Co. v. Dayton Co. (6th Cir.) 223 Fed. 991, 139 C. C. A. 367. And a further trial was then had in this court in the two bankruptcy causes, which were consolidated, resulting in a judgment adjudicating the Dayton Company a bankrupt, on the grounds that, being insolvent and because of its insolvency, a receiver had been put in charge of its property by the Chancery Court, and that, being insolvent, it had applied to the Chancery Court for a receiver of its property, as alleged in the two petitions, respectively.

In the meantime other proceedings had been had in the State courts in reference to the mortgage. The Trust Company appeared in the Chancery Court, answered the original and amended bills, and filed a cross-bill against the Dayton Company and the complainant creditors, seeking a foreclosure of the mortgage, in which the receivers were included as defendants. Subpœna to answer this cross-bill was served on the Dayton Company. Subsequently other creditors filed petitions in the nature of original creditors' bills against the Dayton Company, which were consolidated with the original bill. The original complainants then filed an amended and supplemental bill against the Dayton Company and the Trust Company, alleging that the mortgage was void for various specific reasons, and praying that it be declared null and void, to which the Trust Company and Scottish Banks filed an answer. Thereafter the Chancery Court entered an order permitting the various complainants in the consolidated complaint to make and interpose all defenses to the cross-bill of the Trust Company which the receivers could make, substituting such creditors to the rights of a defendant in lieu of the receivers, and permitting the receivers to have the benefit of any defenses so interposed by the defending creditors, which might inure to the benefit of all creditors of the Dayton Company. The complainant creditors then filed an answer to the cross-bill of the Trust Company "on behalf of all the creditors" of the Dayton Company "under the orders of the court in this cause." Later the attorneys for "general creditors" and the solicitors for the Trust Company and Scottish Banks filed a stipulation agreeing that the validity of the mortgage should be determined by the court under the consolidated bills, and the cross-bill of the Trust Company, and that if the mortgage should be sustained, proper decree for foreclosure should be entered under the cross-bill.

After a hearing upon pleadings and proof the Chancery Court entered a decree that the mortgage was void, and annulling and setting the same aside. This decree was, on appeal, affirmed by the Tennessee Court of Civil Appeals. The case was later heard by the Supreme Court of Tennessee, upon certiorari. On the day of the hearing, the petitioning creditors in the bankruptcy cause No. 1600 filed a petition in the Supreme Court, setting forth that they had filed their bankruptcy petition in this court, which would again stand for trial at the next term of this court; and praying a stay of proceedings in the case.

Thereafter, before the adjudication in bankruptcy had been made, the Supreme Court announced its opinion, holding that as no adjudication in bankruptcy had been made by this court and it had not appointed

any receiver of the property or made any order attempting to take or assert exclusive jurisdiction of the administration of the Company's property, but had refused to assert or claim such jurisdiction, it was the right and duty of that court to proceed to a determination of the questions before it; and, furthermore, that this question should have been made, if at all, by proper petition in the Chancery Court, seasonably invoking its action; and also holding, upon the merits, after full and detailed consideration of the authorities, that the decrees of the Chancery Court and Court of Civil Appeals adjudging the mortgage to be invalid and setting the same aside, were erroneous, and were "reversed." Morgan Bros. v. Coal & Iron Co., 134 Tenn., 228, 235–238, 282, 183 S. W. 1019, Ann. Cas. 1917E, 42. Subsequently, after a petition for rehearing had been denied, a decree was entered by the Supreme Court, as of the date on which its judgment had been announced, sustaining its jurisdiction, and adjudging: That the mortgage to the Trust Company was a valid mortgage upon the property therein described, except as to certain properties to which its lien did not attach; that the decrees of the Chancery Court and Court of Civil Appeals adjudging said mortgage invalid be reversed and the cross-bill of the Trust Company sustained; and that the cause be remanded to the Chancery Court for further proceedings in accordance with the decree and opinion of the court.

In the meantime, after the opinion of the Supreme Court had been announced, but before the decree was entered, the Dayton Company was, as heretofore stated, adjudicated a bankrupt in these consolidated bankruptcy proceedings; and these proceedings were referred to the referee. A trustee in bankruptcy was duly elected, who, by order of the referee, presented his petition to the Chancery Court, asking that all of the property of the Dayton Company be surrendered to him. Whereupon the Chancery Court, as a matter of comity, made an order directing its receiver to turn over to the trustee in bankruptcy all of the property of the bankrupt, including that which had been adjudged by the Supreme Court to be covered by the mortgage, and submitting all controverted questions to the bankruptcy court. All of the property in possession of the Chancery Court receiver, including the mortgaged property, was then forthwith turned over by the Chancery Court receiver to the trustee in bankruptcy, and has since been held by him and administered in the bankruptcy court; the property covered by the mortgage as thus adjudged, having been subsequently sold in the bankruptcy proceedings, with the consent of the Trust Company, and the proceeds, as collected, placed in a special interest-bearing deposit to await the disposition made thereof in these proceedings.

By petition filed with the referee in these proceedings the Trust Company set forth the mortgage and the proceedings that had been had in the State courts and in the bankruptcy court, including the opinion and decree of the Supreme Court, and prayed that the bankruptcy court adjudge the mortgage to be a valid and subsisting lien on the property of the Dayton Company covered thereby, in accordance with the decree of the Supreme Court. To this petition, the trustee in bankruptcy filed an answer, in which he alleged that the State courts were

without jurisdiction to determine the validity of the mortgage by reason of the pendency of the bankruptcy proceedings and that the decree of the Supreme Court sustaining its validity was therefore a nullity, and asserted the invalidity of the mortgage on many grounds, including those originally set forth in the pleadings in the Chancery Court.

Thereafter the questions as to the validity of the mortgage and the effect of the adjudication by the Supreme Court of Tennessee coming on to be heard before the referee, on the pleadings and proof, he made the order now sought to be reviewed, in which, being of opinion that the Supreme Court of Tennessee was without jurisdiction to determine the validity of the mortgage by reason of the pendency of the bankruptcy proceedings and that the mortgage was void on its face, he ordered and adjudged that the mortgage is not a valid lien on the property of the bankrupt, and that the relief sought by the petition of the Trust Company be denied and its petition dismissed, with costs.

It is impracticable to refer to the many authorities and dicta that have been cited or which I have otherwise examined, or to attempt to reconcile or distinguish them in detail, and I shall therefore merely state, as briefly and concisely as possible, the conclusions which I have reached upon the foregoing facts, citing merely those authorities which appear to me to be controlling upon the questions which, under the pleadings, I regard as determinative of the present issues.

[1, 2] 1. A general creditors' bill being a representative or class suit (1 Street's Fed. Eq. Pract. § 541, p. 339), not only the complainants, but all other general creditors represented by them, whether or not made parties thereto, are bound by the decrees therein. Hartford Ins. Co. v. Ibs, 237 U. S. 662, 672, 35 Sup. Ct. 692, 59 L. Ed. 1165, L. R .A. 1916A, 765; Supreme Tribe of Ben Hur v. Cauble, 255 U. S. 356, 363, 41 Sup. Ct. 338, 65 L. Ed. 673; Toler v. East Tennessee Railway (C. C.) 67 Fed. 168, 171 (Lurton, Cir. Judge), and cases therein cited. If then the State court had jurisdiction under the general creditors' bill when the decree was entered adjudging the mortgage to be valid, that decree is now binding upon all general creditors of the Dayton Company; and, necessarily, upon the trustee in bankruptcy, as the representative of such creditors, and as a person acquiring an interest pendente lite. See: Linstroth Wagon Co. v. Ballew (5th Cir.) 149 Fed. 960, 967, 79 C. C. A. 470, 8 L. R. A. (N. S.) 1204.

2. By the filing of the original and amended creditors' bills in the Chancery Court seeking the administration of all the assets of the Dayton Company, to which the Trust Company was a party defendant, and by the appointment of a receiver who took possession of the Company's property, including that covered by the mortgage, the Chancery Court necessarily acquired a jurisdiction to administer such property, which continued, through the actual possession of its receivers, to the time of the Supreme Court decree, unless terminated, as the trustee in bankruptcy insists, as of the date when the first petition in bankruptcy was filed, by the retroactive effect of the adjudication in bankruptcy made thereafter.

3. It was said in Bank v. Sherman (1879) 101 U. S. 403, 406, 25 L. Ed. 866, and repeated in Mueller v. Nugent (1901) 184 U. S. 1,

14, 22 Sup. Ct. 269, 46 L. Ed. 405, that the filing of a petition in bankruptcy is a caveat to all the world, and in effect an attachment and injunction. This remark, however, must be taken with reference to the facts then before the court and "not as applicable to all intents and purposes." York Mfg. Co. v. Cassell, 201 U. S. 344, 353, 26 Sup. Ct. 481, 50 L. Ed. 782; Jones v. Springer, 226 U. S. 148, 155, 33 Sup. Ct. 64, 57 L. Ed. 161. Thus taken, its effect is: That the filing of the petition so impounds the property of the debtor then in his possession, that, as held in Bank v. Sherman, those who deal with it between the filing of the petition and the adjudication, do so at their peril, and cannot acquire title thereto by transfer from the debtor; and that, as held in Mueller v. Nugent, the bankruptcy court may summarily compel its surrender by one holding it merely as agent of the debtor. Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969.

And likewise, the effect of the later decisions of the Supreme Court is that the filing of the petition places all the property of the debtor, held by or for him, in custodia legis and under the control of the bankruptcy court, with a view to its ultimate distribution among creditors, as effectively as if an attachment had been issued, so that, pending the adjudication, no creditor can be given or obtain a lien upon it, by attachment proceedings or otherwise, which would defeat the purposes of the law to dedicate the property to all creditors alike; the title to such property which thereafter becomes vested in the trustee in bankruptcy upon an adjudication relating back to the filing of the petition. Acme Harvester Co. v. Lumber Co., 222 U. S. 300, 307, 308, 32 Sup. Ct. 96, 56 L. Ed. 208 (in which the reference, at page 308 of 222 U. S., is specifically to the debtor's estate "held by him or for him"); Everett v. Judson, 228 U. S. 474, 478, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Cameron v. United States, 231 U. S. 710, 717, 34 Sup. Ct. 244, 58 L. Ed. 448; Lazarus v. Prentice, 234 U. S. 263, 266, 34 Sup. Ct. 851, 58 L. Ed. 1305. Nor for like reasons, can a creditor, after the filing of the petition, perfect a previously invalid lien by taking possession from the debtor. Fairbanks Shovel Co. v. Wills, 240 U. S. 642, 649, 36 Sup. Ct. 466, 60 L. Ed. 841; Massachusetts Bonding Co. v. Kemper (6th Cir.) 220 Fed. 847, 859, 136 C. C. A. 593. Nor receive payment from the debtor. Toof v. City Bank (6th Cir.) 206 Fed. 250, 252, 124 C. C. A. 118.

[3] The custody, or constructive possession, of the debtor's property which is vested in the bankruptcy court by the filing of the petition, ex propria vigore, extends, however, only to the property then held by or for him, of which the court might summarily take possession. See: Orinoco Iron Co. v. Metzel (6th Cir.) 230 Fed. 40, 44, 144 C. C. A. 338; 2 Rem. Bankcy. (2d Ed.) § 1807, p. 1692. And it does not extend to property otherwise held as to which an adverse claimant has a substantial pre-existing claim of lien or title, whose validity, in the absence of actual possession by the bankruptcy court, can only be determined in a plenary suit by the trustee in bankruptcy. Jaquith v. Rowley, 188 U. S. 620, 625, 23 Sup. Ct. 369, 47 L. Ed. 620; Babbitt v. Dutcher, supra, 216 U. S at page 113, 30 Sup. Ct. 372, 54 L.

Ed. 402, 17 Ann. Cas. 969; Martin v. Oliver (8th Cir.) 260 Fed. 89, 93, 171 C. C. A. 125; Re Rathman (8th Cir.) 183 Fed. 913, 925, 106 C. C. A. 253; American Trust Bank v. Ruppe (8th Cir.) 237 Fed. 581, 584, 150 C. C. A. 463. And see Lovel. Bankcy. (2d Ed.) § 37, p. 123. Thus a pledgee having possession of property pledged to secure a pre-existing debt, may lawfully sell the same pending an adjudication. Hiscock v. Varick Bank, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945, affirming Re Mertens (2d Cir.) 144 Fed. 818, 75 C. C. A. 548; Re Ironclad Mfg. Co. (2d Cir.) 192 Fed. 318, 319, 112 C. C. A. 94. Or, after adjudication Jerome v. McCarter, 94 U. S. 734, 739, 24 L. Ed. 136. And even an adjudication does not operate as an attachment depriving a vendor under a prior conditional sale of his right to retake the property. York Mfg. Co. v. Cassell, supra, 201 U. S., at page 353, 26 Sup. Ct. 481, 50 L. Ed. 782.

Nor does the filing of a petition in bankruptcy oust the possession of the debtor's property that has been previously acquired by a State court in the suit of an adverse claimant or terminate the jurisdiction of such court. Lovel. Bankcy. (4th Ed.) § 42, p. 137. Thus it does not terminate the prior jurisdiction of a State court in a suit to foreclose a mortgage. Eyster v. Gaff, 91 U. S. 521, 524, 23 L. Ed. 403; Jerome v. McCarter, supra; Carling v. Lumber Co. (5th Cir.) 113 Fed. 483, 490, 51 C. C. A. 1; Re Rohrer (6th Cir.) 177 Fed. 381, 383, 100 C. C. A. 613; David v. Railroad Co. (C. C.) Fed. Cas. No. 3648, 1 Woods. 661, 7 Fed. Cas. 164 (Bradley, Cir. Justice); Re Irving (D. C.) Fed. Cas. No. 7073, 8 Ben. 464, 13 Fed. Cas. 108 (Blatchford, Dist. Judge). Or, in a suit to enforce a pre-existing lien. Re Farrell (6th Cir.) 201 Fed. 338, 340, 119 C. C. A. 576; Re Brinn (D. C.) 262 Fed. 527. Or, in a replevin suit. Linstroth Wagon Co. v. Ballew (5th Cir.) 149 Fed. 960, 79 C. C. A. 470, 8 L. R. A. (N. S.) 1204. Or, in a prior attachment suit commenced more than four months before the filing of the petition. Jones v. Springer, 226 U. S. at page 155, 33 Sup. Ct. 64, 57 L. Ed. 161; Tennessee Marble Co. v. Grant (3d Cir.) 135 Fed. 322, 323, 67 C. C. A. 676; Re Rudnick (2d Cir.) 160 Fed. 903, 80 C. C. A. 85; Griffin v. Lenhart (4th Cir.) 266 Fed. 671; Re Baird (D. C.) 154 Fed. 215. Nor, in a prior replevin suit. Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128.

A more difficult question arises where the possession of the State court was obtained in a proceeding to acquire a lien by attachment or otherwise, commenced within four months before the filing of the petition in bankruptcy and invalidated by the provisions of section 67 of the Bankruptcy Act (Comp. St. § 9651). See 1 Lovel. Bankcy. (4th Ed.) § 42, p. 140, and sections 55, 56, p. 166 et seq. However, even in such case, it seems clear, upon principle, that the bankruptcy court cannot be vested by the filing of the petition with a constructive possession of the property which can operate of its own force—contrary to every analogy of the law—to oust the actual possession of the State court, and that it acquires, at the most, a right to the custody and control of the property which entitles it to obtain possession in an appropriate manner from the State court, and, if necessary, to stay

further proceedings in the State court in regard thereto. Thus in Martin v. Oliver, 260 Fed. 95, 96, 171 C. C. A. 125, it was held that property in the possession of a State court, by levy in the suit of an adverse claimant within four months before the filing of the petition in bankruptcy court could not be taken summarily from the receiver of the State court; that notice of the bankruptcy proceeding must be given the State court and application made to it for surrender of the property; and that otherwise it did not lose jurisdiction and its subsequent judgment was res judicata. And see Re Lesser (D. C.) 100 Fed. 433, 439.

[4] I hence conclude that as the Chancery Court of Rhea County had acquired, before the filing of the petitions in bankruptcy, jurisdiction both of the Dayton Company and of its property and had taken such property into its actual possession, through its receiver, the filing of the petitions did not, of themselves, operate, by virtue of the rules stated in the Mueller and Acme Harvester Co. Cases, to transfer the property of the Dayton Company from the actual possession of the Chancery Court into the possession of the bankruptcy court, or to terminate the jurisdiction of the Chancery Court to administer the property of the Dayton Company under the general creditors' bill.

[5] 4. I am further of opinion that, independently of the foregoing rules, the prior jurisdiction of the Chancery Court under the general creditors' bill, was not, ipso facto, terminated or suspended by the filing of the petitions in bankruptcy, under the doctrine stated in Re Watts, 190 U. S. 1, 23 Sup. Ct. 718, 47 L. Ed. 933, because of the fact that this was a general winding up proceeding against the Dayton Company, as distinguished from a suit to enforce a specific lien, and that the application for and appointment of the receiver in such proceeding were alleged as acts of bankruptcy in the petitions, which were afterwards sustained. It is a general and fundamental rule of substantive law that a court which first acquires jurisdiction over property in controversy is entitled to retain that jurisdiction to the end of the litigation, without interference from any other court whatever. 3 Street's Fed. Eq. Pract. § 2529, p. 1466. And, as between the State and Federal courts, this is more than a rule of comity, and "a principle of right and law" which so operates that when one court takes specific property into its jurisdiction the res is as much withdrawn from the operation and power of any other court as if it had been carried physically into a different territorial sovereignty. Covell v. Heyman, 111 U. S. 176, 182, 4 Sup. Ct. 355, 28 L. Ed. 390; Gates v. Bucki (8th Cir.) 53 Fed. 961, 966, 4 C. C. A. 116. In the Watts Case, however, it was "assumed," without express decision, that in view of the paramount nature of the bankruptcy law in the administration of the affairs of insolvents, prior general winding up proceedings in a State court, as distinguished from cases of adverse possession or possession in the enforcement of pre-existing liens, are superseded or suspended by the filing of a petition in bankruptcy, especially where the appointment of a receiver in a proceeding in the State court is alleged as an act of bankruptcy. 190 U. S. at pages 27, 30, 35, 23 Sup. Ct. 718, 47 L. Ed. 933. However, it was specifically recognized in the opinion that the general

rule as between courts of concurrent jurisdiction "that property already in the possession of the receiver of one court cannot rightfully be taken from him without the court's consent, by the receiver of another court appointed in a subsequent suit," while having only a qualified application where winding up proceedings are superseded by those in bankruptcy as to which the jurisdiction is not concurrent, still "obtains as a rule of comity" (190 U. S. at page 27, 23 Sup. Ct. 718, 47 L. Ed. 933), pursuant to which the receiver of the bankruptcy court had properly brought his appointment to the knowledge of the State court and requested delivery of the assets. In Eyster v. Gaff, supra, 91 U. S. at page 524, 23 L. Ed. 403, it was said, that the State court having acquired prior jurisdiction for the foreclosure of a mortgage on the debtor's property, "could not take judicial notice of the proceedings in bankruptcy in another court," however much it affected the rights of the parties; that "it was the *duty* of that court to proceed to a decree as between the parties before it until by some proper pleadings in the case it was informed of the changed relations of any of those parties to the subject-matter of the suit"; and that, having such jurisdiction and performing its duty as the case stood in that court, its decree could not be treated as "void." This rule was expressly followed in Re Rathman, supra, 183 Fed. at pages 923, 929, 106 C. C. A. 253, in reference to a proceeding for the foreclosure of a mortgage brought in a State court after the filing of a petition in bankruptcy. In Jones v. Springer, supra, 226 U. S. at page 155, 33 Sup. Ct. 64, 57 L. Ed. 161, it was said, citing Eyster v. Gaff and other cases, that where, under an attachment levied in a State court before the petition in bankruptcy was filed, the property had been put into the hands of a receiver, without notice of the petition, it is "not true that all power and jurisdiction of the local court were ended before notice of the bankruptcy proceedings."

And where prior to the filing of a petition in bankruptcy the debtor's property is in the possession of a State court in insolvency or winding up proceedings, it should not be taken from the receiver of the State court by summary order or process of the bankruptcy court, but in obedience to the rule of comity, application should be made to the State court for an order directing its surrender. Carling v. Lumber Co. (5th Cir.) 113 Fed. 483, 491, 51 C. C. A. 1; Hooks v. Aldridge (5th Cir.) 145 Fed. 865, 869, 76 C. C. A. 409; Ohio Motor Co. v. Magneto Co. (6th Cir.) 230 Fed. 370, 377, 144 C. C. A. 512; Re Lengert Wagon Co. (D. C.) 110 Fed. 927, 928; Re Knight (D. C.) 125 Fed. 35, 45; Brown v. Crawford (D. C.) 254 Fed. 146, 153. And see, by analogy, Martin v. Oliver, supra; Re Rathbone, supra; Re Lesser, supra.

[6] In the light of the foregoing cases, I conclude that the prior jurisdiction acquired by a State court in a winding up proceeding, is not ipso facto superseded or suspended by the filing of a petition in bankruptcy, but that, as the State court cannot take judicial notice of the bankruptcy proceedings and is under the duty of proceeding in the case before it until informed of the changed relations of the defendant, it retains its jurisdiction in the winding up proceedings, under the rule of comity, until the pendency of the bankruptcy proceedings is brought to its notice and a request made to it by the bankruptcy court or a

duly authorized officer thereof, for the delivery of possession of the property of the defendant. A contrary holding would, in my opinion, be not only in conflict with the foregoing authorities and the rule of comity, but against a sound public policy. It would certainly lead to most disastrous results, to the wasting of the assets in fruitless litigation, and to great confusion, if, after the filing of the petition in bankruptcy the hand of a State court is to be deemed as stayed by the mere operation of law, so that when, without notice of the bankruptcy petition or any request of the bankruptcy court for the surrender of the assets, the State court proceeds in the due administration of the estate entrusted to its charge, adjudicating the rights of parties, selling and disposing of assets, and subsequently after an interval of months, or in case of contest and appeals, perhaps of years, an adjudication in bankruptcy is made, its jurisdiction is to be deemed to have been terminated, as matter of law, upon the filing of the petition and all its subsequent proceedings rendered thereby void. And this is especially the case where the bankruptcy court has not only failed to request the delivery of the property but, on the contrary, as in this case, affirmatively declined to appoint a receiver to take charge thereof. So far as I am aware, this has never been held or even suggested in any previous case. And I find nothing contrary to the view herein expressed in the holding in Re Diamond's Estate (6th Cir.) 259 Fed. 70, 170 C. C. A. 138. There the receiver of the bankruptcy court had been directed to apply to the State court for the surrender of all the debtor's assets, and the State court had, upon such application, directed its receiver so to do. Thereafter, an adjudication in bankruptcy having been made, and the State receiver declining to turn over all the assets to the bankruptcy receiver, as he had been ordered by the State court to do, it was held that the bankruptcy court might summarily compel him to surrender such assets. There, of course, the State court had received actual notice of the pendency of the bankruptcy proceedings, the rule of comity had been fully complied with, and the recalcitrant receiver was then no longer holding the assets for the State court, but in disobedience of its specific order. See Galbraith v. Vallely, 256 U. S. 46, 41 Sup. Ct. 415, 65 L. Ed. 823.

[7] 5. I am further of opinion that, independently of the general jurisdiction of the Chancery Court under the creditors' bill, it acquired complete jurisdiction to enforce the mortgage under the cross-bill of the Trust Company, to which the Dayton Company was made a party and served with process, that was not affected by the pendency of the bankruptcy proceedings. Under section 70 of the Bankruptcy Act (Comp. St. § 9654), a trustee in bankruptcy is vested only with the bankrupt's title to property. Hence where the bankrupt's property is subject to a mortgage or other incumbrance, the trustee acquires title only to the bankrupt's equity therein, subject to such incumbrance. And since under section 67 (d) of the Act, as amended, valid pre-existing liens, not inhibited by its provisions, are not affected by the Act, a lien holder, unless restrained by order of the bankruptcy court in the protection of the equity in the property or otherwise, may enforce his lien dehors the court. Ward v. Bank of Ironton (6th Cir.) 202 Fed.

609, 612, 120 C. C. A. 655; Re Goldsmith (D. C.) 118 Fed. 763, 767; Re North Star Ice Co. (D. C. Tenn.) 252 Fed. 301, 303; Re Southern Pharmaceutical Co. (D. C. Tenn.) 286 Fed. 148. One contesting the right to property with his debtor loses none of his rights by the bankruptcy of his adversary; the same courts remaining open to him in such contests as before, and their jurisdiction not being divested by the statute. Eyster v. Gaff, supra, 91 U. S. at page 525, 23 L. Ed. 403; Bardes v. Hawarden Bank, 178 U. S. 524, 531, 20 Sup. Ct. 1000, 44 L. Ed. 1175. The Bankruptcy Act does not by any of its provisions deprive a lienor of any remedy with which he is vested by the law of the State. Hiscock v. Varick Bank, supra, 206 U. S. at page 41, 27 Sup. Ct. 681, 51 L. Ed. 945. And the statement in Lazarus v. Prentice, supra, 234 U. S. at page 266, 34 Sup. Ct. 851, 58 L. Ed. 1305, that after the filing of a petition in bankruptcy proceedings "cannot be had in other courts to reach the property" evidently relates, as shown by the context and the citation to the Acme Harvester Co. Case, merely to cases in which it is sought by such proceedings to acquire the property or fasten a lien upon it. Thus a pledgee may sell, after the filing of the petition. Hiscock v. Varick Bank, supra; Re Ironclad Mfg. Co., supra. And a mortgagee may, after the filing of the petition, institute a suit in a State court to foreclose a pre-existing mortgage. Sedgwick v. Grinnell (D. C.) Fed. Cas. No. 12,612, 9 Ben. 429, 21 Fed. Cas. 978 (Blatchford, Cir. Judge); Re San Gabriel Sanatorium Co. (9th Cir.) 111 Fed. 892, 50 C. C. A. 56 (rehearing and reversing 102 Fed. 310, 42 C. C. A. 369); Re Rathman, supra. In such case the jurisdiction of the State court continues even after an adjudication and the appointment of a trustee. Re San Gabriel Sanatorium Co., supra. At least in the absence of any notice to the State court of the pendency of the bankruptcy proceedings or any proceeding by the bankruptcy court or its officers to acquire possession of the mortgaged property. Re Rathman, supra, 183 Fed. at pages 923, 929, 106 C. C. A. 253. So even after an adjudication a mortgagee may bring a foreclosure suit in a State court, making the trustee in bankruptcy a party. See: Powell v. Leavitt (1st Cir.) 150 Fed. 89, 80 C. C. A. 43; Re Sampter (2d Cir.) 170 Fed. 938, 96 C. C. A. 98; Skilton v. Coddington, 185 N. Y. 80, 85, 77 N. E. 790, 113 Am. St. Rep. 885.

It is true that these cases conflict somewhat with the broad rule stated in 1 Lovel. Bankcy. (4th Ed.) 171, as to the exclusive jurisdiction acquired by a bankruptcy court over mortgaged property in the possession of the debtor at the time the petition is filed, which was recognized by me, over-broadly, in Re Patterson Lumber Co. (D. C. Tenn.) 247 Fed. 578, 579, in which the mortgaged property had been taken into actual possession of the bankruptcy court. It is unnecessary, however, to now determine as to the correctness of this rule, since in any event, it can have no application to the present case by reason of the fact that at the time the petition in bankruptcy was filed the mortgaged property was not in the possession of the Dayton Company, but of the Chancery Court.

It is also true that these cases conflict somewhat with the broad statements, if not the precise holdings, in Pugh v. Loisel (5th Cir.)

219 Fed. 418, 421 (Pardee, Cir. Judge, diss.); Roger v. Levert, Co., (5th Cir.) 237 Fed. 737; Re Hasie (D. C.) 206 Fed. 789; Matthews v. Webre Co. (D. C.) 213 Fed. 396; and McLoughlin v. Knop (D. C.) 214 Fed. 260.

Without, however, attempting to analyze all these cases or reconcile their views, I conclude that, as the mortgaged property was not in the possession of the Dayton Company at the time the petitions in bankruptcy were filed, but then was and remained in the possession of the Chancery Court, that court acquired complete jurisdiction to foreclose the mortgage, independently of its jurisdiction under the general credi-tors' bill, under the cross-bill filed by the Trust Company, to which both the Dayton Company and its receivers were made defendants, and which was defended by representatives of all its creditors; and that such jurisdiction was not terminated at any time by notice to the Chancery Court of the pendency of the bankruptcy proceedings or any request of the bankruptcy court for the surrender of the property or other assertion of its jurisdiction. Whether or not it would have been subject to such termination, it is unnecessary to decide.

6. I am also of opinion that as the Chancery Court had complete jurisdiction when its decree as to the mortgage was rendered, such jurisdiction would likewise have vested in the Supreme Court of Tennessee as to this matter under the appellate proceedings, regardless of any change in the status between the decrees of the Chancery Court and of the Supreme Court; the jurisdiction of the Supreme Court relating back to that of the Chancery Court at the time its decree was entered. But, however this may be, the decree of the Supreme Court was properly entered as of the date on which its judgment was announced; and at that time no adjudication in bankruptcy had been made and no request for the delivery of the property had been made by the bankruptcy court or any authorized officer thereof, either to the Chancery Court or to the Supreme Court; the ex parte application made to the Supreme Court by the petitioning creditors, without authority from the bankruptcy court, not having, in my opinion, such effect.

7. I hence conclude that the Supreme Court of Tennessee had complete jurisdiction to enter the decree adjudging the validity of the mortgage to the Trust Company and that such decree is now binding as res judicata upon the trustee in bankruptcy in these proceedings. The doctrine of res judicata is not a mere matter of practice and proceeding, but is a rule "of public policy and of private peace," which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way. Kessler v. Eldred, 206 U. S. 285, 27 Sup. Ct. 611, 51 L. Ed. 1065; Hart Steel Co. v. Supply Co., 244 U. S. 294, 37 Sup. Ct. 506, 61 L. Ed. 1148. And this is especially true where in a Federal court it is sought to depart from the judgment of the highest court of the State in a matter carefully considered and involving the proper construction and effect of the prior decisions of that court concerning the validity of real estate mortgages; as to which it is important that the rulings

of the State court should prevail in order that titles shall be uniform and that the rights of litigants may not vary with the forum in which the ruling is invoked.

[8] 9. And the decree of the Supreme Court as to the validity of the mortgage is in any event binding, upon the principle of election and estoppel, upon those creditors of the Dayton Company who elected to appear in the proceedings in the Chancery Court and have their rights therein determined. Ohio Motor Co. v. Magneto Co., (6th Cir.) 230 Fed. 370, 376, 144 C. C. A. 512. And see Re Commonwealth Lumber Co. (D. C.) 223 Fed. 667.

10. It is hence unnecessary to determine whether, independently of the binding force of the decree of the Supreme Court of Tennessee, the mortgage should otherwise be held invalid, notwithstanding the decision of that court, for any of the reasons urged by the trustee in bankruptcy.

11. A decree will accordingly be entered overruling the order of the referee; adjudging the mortgage to be valid, in accordance with the decree of the Supreme Court of Tennessee; and returning the record to the referee for further proceedings in accordance herewith.